UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

JASON DENNY, Individually and On Behalf       :     Civil Action No.
of All Others Similarly Situated,             :
                                              :
                                              :     CLASS ACTION
                          Plaintiff,          :
                                              :
                                              :     **COMPLAINT FOR VIOLATION OF THE**
          vs.                                 :     **FEDERAL SECURITIES LAWS**
                                              :
CANAAN INC., NANGENG ZHANG and                :
TONG HE,                                      :
                                              :
                                              :
                          Defendants.         :     DEMAND FOR JURY TRIAL
                                              :

———————————————————— x

Plaintiff Jason Denny ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the U.S. Securities and Exchange Commission ("SEC") filings by Canaan Inc. ("Canaan" or the "Company"), Company press releases, conference call transcripts and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.     This is a securities class action on behalf of all purchasers of the American Depositary Receipts ("ADRs") of Canaan between February 10, 2021 and April 9, 2021 (the "Class Period"), against Canaan and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act").

2.     Canaan designs, manufactures and sells bitcoin mining machines, primarily in the Peoples Republic of China (the "PRC").  It is organized under the laws of the Cayman Islands, headquartered in Hangzhon PRC and its ADRs are listed and trade on the NASDAQ Global Market ("NASDAQ").

3.     Canaan's fiscal year 2020 ("FY20") ended on December 31, 2020.  On February 9, 2021, nearly six weeks later, Canaan announced that its former Chief Financial Officer ("CFO"), Quanfu Hong ("Hong"), had suddenly resigned effective immediately, providing no explanation as to why and citing only "personal reasons."  The next day, February 10, 2021, Canaan issued a press release announcing that its "revenue visibility ha[d] improved substantially" and making other positive statements about purported visibility into increases in the size and quality of orders the

Company had been receiving.  These statements were heralded by the investment community in light of former CFO Hong's statements on November 30, 2020 that "the demand for mining machines in the market continued to rebound during the third quarter, and" that Canaan had "received *a large number of pre-sale orders which [were] scheduled for delivery starting in the fourth quarter of 2020*" ("4Q20").  Predictably, the market reacted positively to these statements, driving up the market price of Canaan ADRs from their open of $6.91 each on Monday, February 8th to close at $13.04 each on Friday, February 12th, *an increase of nearly 90%*.

4.      Yet the statements Canaan issued during the Class Period about the Company's business metrics and financial prospects were materially false and misleading in that they concealed that due to ongoing supply chain disruptions and the introduction of the Company's next-generation A12 series bitcoin mining machines – which had cannibalized sales of the older product offerings – Canaan's 4Q20 sales had declined more than 93% year-over-year compared to its fourth quarter fiscal year 2019 ("4Q19") sales and more than 93% quarter-over-quarter compared to its third quarter FY20 ("3Q20") sales.  As a result, Canaan's 4Q20 total net revenues had decreased to RMB38.2 million (US$5.9 million) from RMB463.2 million in the 4Q19 and RMB163.0 million in the 3Q20.

5.      On Monday, April 12, 2021, before the opening of trading, Canaan issued a press release finally disclosing its actual 4Q20 and FY20 financial results for the period ended December 31, 2020, including a 93% year-over-year decrease in computing power sold and net revenues for the quarter.  On this news, the market price of Canaan ADRs collapsed from their close of $18.67 per ADR on April 9, 2021 to close at $13.14 per ADR on April 12, 2021, *a decline of nearly 30%*, on unusually high volume of approximately 60 million ADRs trading, more than three times the average daily volume over the preceding ten trading days.

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

7.      Venue is proper here pursuant to §27 of the 1934 Act.  Canaan's stock is listed ***only*** on the NASDAQ, which is located in this District, and many of the acts and transactions giving rise to the violations of law complained of occurred here.  Canaan's U.S. counsel is Simpson Thacher & Bartlett LLP, located in this District, as is the depository bank for its ADRs, The Bank of New York Mellon, which provides substantial investor relations services to the Company in this District.

8.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

9.      Plaintiff Jason Denny purchased Canaan ADRs as described in the attached certification, incorporated herein, and was damaged thereby.

10.     Defendant Canaan engages in the research, design, and sale of integrated circuit ("IC") final system products by integrating IC products for bitcoin mining and related components primarily in the PRC.  The Company was founded in 2013 and is based in Hangzhou, the People's Republic of China.  Its ADRs, each representing fifteen shares of Canaan common stock, trade on the NASDAQ under the ticker symbol "CAN."  As of December 31, 2020, Canaan had more than 2 billion shares of its ordinary stock issued and outstanding and its only public stock listing is the Company's ADR program in the U.S.

11.     Defendant Nangeng Zhang ("Zhang") is, and at all relevant times was, the Chief Executive Officer ("CEO") of Canaan and the Chairman of its Board of Directors.

12.     Defendant Tong He ("He") is, and at all relevant times was, the CFO of Canaan, having assumed that position on or about February 9, 2021 upon former CFO Hong's resignation.

13.     Defendants Zhang and He (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Canaan's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, Zhang and He knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  Zhang and He are liable for the false statements pleaded herein at ¶¶19-20, 22, 24.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

14.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Canaan.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Canaan stock and ADRs was a success, as it: (i) deceived the investing public regarding Canaan's prospects and business; (ii) artificially inflated the prices of Canaan stock and ADRs; and (iii) caused plaintiff and other members of the Class to purchase Canaan stock and ADRs at inflated prices.

## SUBSTANTIVE ALLEGATIONS

15.     "Bitcoin" generally refers to  cryptocurrency tokens and the networks they are traded on.  Bitcoin mining is the process by which new bitcoins are entered into circulation, but it is also a

critical component of the maintenance and development of the blockchain ledger. It is performed using very sophisticated computers that solve extremely complex computational math problems.

16.    By mining, bitcoin "investors" earn cryptocurrency without having to put down money for it. Bitcoin miners receive bitcoin as a reward for completing "blocks" of verified transactions which are added to the blockchain. Mining rewards are paid to the miner who discovers a solution to a complex hashing puzzle first, and the probability that a participant will be the one to discover the solution is related to the portion of the total mining power on the network.

17.    Miners, in effect, are compensated for working as auditors. They are doing the work of verifying the legitimacy of bitcoin transactions. This convention is meant to keep bitcoin users honest and was conceived by bitcoin's founder, Satoshi Nakamoto. By verifying transactions, miners help to prevent the "double-spending problem."

18.    Canaan, founded in 2013, purports to be one of the top bitcoin mining ASIC manufacturers, specializing in the sale of Avalon-branded bitcoin miners. The Company was taken public through an initial public stock offering in November 2019, and Canaan ADRs trade in New York on the NASDAQ.

19.    Canaan's 3Q20 ended on September 30, 2020. On November 30, 2020, Canaan issued a press release announcing its 3Q20 financial results. In addition to reporting that Canaan had had sold "2.9 million Thash/s, representing a year-over-year decrease of 20.7% from 3.7 million Thash/s in the same period of 2019 and a quarter-over-quarter increase of 13.4% from 2.6 million Thash/s in the second quarter of 2020," it represented that Canaan had achieved "[t]otal net revenues in the third quarter of 2020 was RMB163.0 million (US$24.0 million), representing a year-over-year decrease of 75.7% from RMB670.6 million in the same period of 2019 and a quarter-over-quarter

decrease of 8.5% from RMB178.1 million in the second quarter of 2020."[1]  The release also quoted

defendant Zhang and then-CFO Hong stating that Company was experiencing continued strong

business metrics and financial prospects, stating in pertinent part as follows:

> Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "During the third quarter of 2020, we remained undeterred by the pandemic to strengthen our research and development capabilities, expand our AI business, and execute new business initiatives.  By leveraging our enhanced R&D capabilities in the third quarter, we launched our A1246 product series, which continues to lead the industry with its energy efficiency, computing power, and unit cost.  In addition, we have also accelerated the monetization of our AI business through our partnerships with a number of companies in various industries, such as online education and smart city solutions.  In the third quarter of 2020, for example, we implemented our K210 AI chips in hardware sensors from our partner to better ensure the proper execution of social distancing practices in response to the outbreak of COVID-19.  With new generations of mining machines and AI chips in the pipeline, we are confident that the enhanced performance of our new products will continue to bolster our competitive advantages and solidify our market leadership going forward."

> Mr. Quanfu Hong, Chief Financial Officer of Canaan, stated, "The pandemic and resulting macroeconomic uncertainties continued to impact the production capacity of the global IC industry in the third quarter of 2020. ***However, the demand for mining machines in the market continued to rebound during the third quarter, and we have received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020***. Looking ahead, we remain committed to investing in areas that will further strengthen our collaboration with established IC manufacturers, enhance our inventory management, streamline our research and development initiatives, and generate lasting value for our shareholders."

20.     During a conference call conducted later that morning with stock analysts and

investors, defendants made more positive statements about the Company's then-present business

metrics and financial prospects.  All of these statements remained alive and uncorrected in the

market throughout the Class Period.

---

[1]  "Thash" refers to Terahash, the measuring unit of the processing power of a bitcoin mining machine.  "Thash/s" refer to the measuring unit of hash rate.

21.     On February 9, 2021, Canaan announced that its former CFO Hong had suddenly resigned effective immediately, providing no explanation as to why and citing only "personal reasons."

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

22.     The Class Period starts on February 10, 2021.  On that date, defendants issued a press release claiming that Canaan's "revenue visibility ha[d] improved substantially," and stating in pertinent part as follows:

> Canaan . . . . today announced that *its revenue visibility has improved substantially* in 2021 *as a result of attaining purchase orders totaling more than 100,000 units of bitcoin mining machines from customers in North America. Many of those purchase orders were placed with prepayment and will likely occupy the Company's current manufacturing capacity entirely for the full year of 2021 and beyond.* With those fully committed purchase orders, the Company now enjoys a much higher degree of revenue visibility and more precise forecast.  As such, the Company is able to leverage such information and additional liquidity to conduct its component purchases, production scheduling, warehousing and logistics.
>
> Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "We have changed our operations model in 2021.  Previously we were selling bitcoin mining machines mostly to individual mining operators who may not have longer-term planning. In late 2020, we shifted our client base to mostly publicly traded companies and bitcoin-focused investment funds which tend to place sizable orders with longer-term commitment. *As a result, we can now forecast our revenue much more precisely.  Our increased revenue visibility is not only enabling us to plan our production and logistics well in advance, but also helping us to optimize our cost structure and improve our customer satisfaction rate.  Above all, it should help us achieve profitable growth for the long run.*"

23.     Predictably, the market reacted positively to these statements, especially in light of the November 30, 2020 comments that demand was strong for the Company's products and services and that a significant number of pre-orders had begun shipping in the 4Q20.  The market price of Canaan ADRs increased from their open of $6.91 each on Monday, February 8th to close at $13.04 each on Friday, February 12th, *an increase of nearly 90%*.

24.    On April 9, 2021, an interview with defendant Zhang was published in *Decrypt* magazine in an article entitled "Canaan CEO Is Bullish on Bitcoin Mining Ahead of Earnings – the Nasdaq-listed manufacturer of crypto mining hardware has seen its stock jump almost 1000% in six months."  The article quoted Zhang, who emphasized that the global shortage of chips had not negatively impacted Canaan, stating in pertinent part as follows:

> ***But Canaan anticipates it will have no problem fulfilling its bulging order book. Zhang said that the company had secured chips from a number of fabrication plants in advance of the worldwide shortage of processors—which has impacted the gaming, computing, and automotive industry, as well as Bitcoin mining.***
>
> ***"Our approach is one of a multi-fab strategy, where we collaborate and work with a number of leading chip manufacturers to reduce supply-chain risks,"*** he explained.
>
> ***This has allowed Canaan to continue to produce its popular Avalon miners on a scale to meet market demand.***

25.    The true facts, which were known or recklessly disregarded by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    that Canaan had experienced significant ongoing supply chain disruptions during the 4Q20;

(b)    that the introduction of Canaan's next-generation A12 series bitcoin mining machines had cannibalized sales of the older product offerings during the 4Q20;

(c)    that as a result of the foregoing, Canaan's 4Q20 sales and sales revenues had declined dramatically; and

(d)    that as a result of the foregoing Canaan was not on track to achieve the strong financial prospects it had led the market to believe.

26.    On Monday, April 12, 2021, before the opening of trading, Canaan issued a press release disclosing its actual 4Q20 and FY20 financial results for the period ended December 31, 2020.  The release stated in pertinent part as follows:

### Canaan Inc. Reports Unaudited Fourth Quarter and
### Full Year 2020 Financial Results

Hangzhou, China, April 12, 2021 (GLOBE NEWSWIRE) — Canaan Inc. (NASDAQ: CAN) ("Canaan" or the "Company"), a leading high-performance computing solutions provider, today announced its unaudited financial results for the three months and twelve months ended December 31, 2020.

### Fourth quarter 2020 Operating and Financial Highlights

**Total computing power sold** was 0.2 million Thash/s, representing a ***year-over-year decrease of 93.1%*** from 2.9 million Thash/s in the same period of 2019 and a ***quarter-over-quarter decrease of 93.1%*** from 2.9 million Thash/s in the third quarter of 2020.

**Total net revenues** ***decreased to RMB38.2 million (US$5.9 million) from RMB463.2 million in the same period of 2019 and RMB163.0 million in the third quarter of 2020***.

**Gross profit** was RMB9.1 million (US$1.4 million) compared to a gross loss of RMB673.4 million in the same period of 2019 and a gross loss of RMB17.0 million in the third quarter of 2020.

**Net loss** narrowed to RMB72.0 million (US$11.0 million) from RMB798.2 million in the same period of 2019 and RMB86.4 million in the third quarter of 2020.

**Non-GAAP adjusted net loss** narrowed to RMB73.1 million (US$11.2 million) from RMB750.5 million in the same period of 2019 and RMB84.8 million in the third quarter of 2020.

### Full Year 2020 Operating and Financial Highlights

**Total computing power** sold was 6.6 million Thash/s, representing a year-over-year decrease of 37.1% from 10.5 million Thash/s in 2019.

**Total net revenues** decreased to RMB447.7 million (US$68.6 million) from RMB1,422.6 million in 2019.

**Gross profit** was RMB37.8 million (US$5.8 million) compared to a gross loss of RMB516.0 million in 2019.

**Net loss** narrowed to RMB215.1 million (US$33.0 million) from RMB1,034.5 million in 2019.

**Non-GAAP adjusted net loss** narrowed to RMB212.1 million (US$32.5 million) from RMB764.3 million in 2019.

Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "Although the outbreak of COVID-19 caused **supply chain disruptions and thus negatively impacted our revenues** in the fourth quarter of 2020, our market leadership has enabled us to attain US$174 million of contracted orders with US$66 million of cash advance from customers as of December 31, 2020, thus laying a solid foundation for substantial revenue growth in 2021.  During the fourth quarter, we fueled our overseas expansion, invested in our R&D capabilities, refined our supply chain management, and **started mass production of our next-generation A12 series of bitcoin mining machines**.  All of those efforts have enabled us to begin delivering the A12 series of products at a large scale in the first quarter of 2021.  In addition to fortifying our core mining machine business, we also achieved meaningful progress in our AI and Artificial IoT segments, both of which we believe have solid growth potential.  After deep analysis of specific application use cases and the current market demand for computing power, we designed two new series of AI chips that will be in production in the second half of 2021."

Mr. Tong He, Chief Financial Officer of Canaan, stated, "**Due to supply chain disruptions**, as the price of Bitcoin rallied in late 2020, we experienced a surge of demand for high-quality mining machines both in and outside of China.  By leveraging our established market presence, we further optimized our international customer base and secured a large number of pre-orders from clients in both domestic and international markets, and streamlined our supply chain management to optimize our cash flow.  Our abundant cash reserve gives us the confidence to expand our global client service coverage and develop more first-rate products going forward.  Meanwhile, the rapid development of our new business initiatives should help us to launch into a new growth cycle and deliver increasing value to both our customer and shareholders over the long term."

27.     During the conference call held with investors that morning, Canaan's Secretary to the Board of Directors, Shaoke Li, translating for defendant Zhang, stated that Canaan had experienced "a severe supply shortage" of "mining machine" chips during the 4Q20.  Li also stated, again translating for defendant Zhang, that the older machines that were sold during the 4Q20 were sold for lower prices than the newer machines the Company was then receiving pre-orders for.  This price decline for Canaan mining machines occurred despite defendants' previous statements to investors that the price of bitcoin mining machines typically increased with the price of bitcoin, which had risen dramatically in the 4Q20.

28.     On this news, the market price of Canaan ADRs collapsed from their close of $18.67 per ADR on April 9, 2021 to close at $13.14 per ADR on April 12, 2021, **a decline of nearly 30%**,

on unusually high volume of approximately 60 million ADRs trading, or more than three times the average daily volume over the preceding ten trading days.

## ADDITIONAL SCIENTER ALLEGATIONS

29.     As alleged herein, Canaan and the Individual Defendants acted with scienter in that they: (i) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Canaan, their control over, and/or receipt and/or modification of Canaan's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Canaan, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

30.     The "Safe Harbor" warnings accompanying Canaan's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 6-K, they are excluded from the protection of the statutory Safe Harbor.  *See* 15 U.S.C. §78u-5(b)(2)(A).

31.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Canaan who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or

relating to any plan, projection or statement of future economic performance, as they were not stated

to be such assumptions underlying or relating to any projection or statement of future economic

performance when made, nor were any of the projections or forecasts made by defendants expressly

related to or stated to be dependent on those historic or present tense statements when made.

## LOSS CAUSATION AND ECONOMIC LOSS

32.     During the Class Period, as detailed herein, defendants engaged in a scheme to

deceive the market and a course of conduct that artificially inflated the prices of Canaan ADRs and

operated as a fraud or deceit on purchasers of Canaan ADRs.  As detailed above, when the truth

about Canaan's misconduct was revealed, the value of Canaan's ADRs declined precipitously as the

prior artificial inflation no longer propped up the ADR price.  The decline in the price of Canaan

ADRs was the direct result of the nature and extent of defendants' fraud finally being revealed to

investors and the market.  The timing and magnitude of the share price decline negate any inference

that the losses suffered by Plaintiff and other members of the Class were caused by changed market

conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants'

fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members

was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Canaan ADRs

and the subsequent significant decline in the value of Canaan ADRs when defendants' prior

misrepresentations and other fraudulent conduct were revealed.

33.     At all relevant times, defendants' materially false and misleading statements or

omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and other

Class members.  Those statements were materially false and misleading through their failure to

disclose a true and accurate picture of Canaan's business, operations and financial results as alleged

herein.  Throughout the Class Period, defendants issued materially false and misleading statements

and omitted material facts necessary to make defendants' statements not false or misleading, causing

the price of Canaan ADRs to be artificially inflated.  Plaintiff and other Class members purchased

Canaan ADRs at those artificially inflated prices, causing them to suffer damages as complained of

herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

34.     Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute*

*Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants

are predicated upon omissions of material fact for which there was a duty to disclose.

35.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic*

*Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for

Canaan ADRs was an efficient market at all relevant times by virtue of the following factors, among

others:

(a)     Canaan ADRs met the requirements for listing, and were listed and actively

traded on NASDAQ, a highly efficient market;

(b)     Canaan regularly communicated with public investors via established market

communication mechanisms, including the regular dissemination of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(c)     Canaan was followed by a number of securities analysts employed by major

brokerage firms who wrote reports which were distributed to the sales force and certain customers of

their respective brokerage firms.  These reports were publicly available and entered the public

marketplace.

36.     As a result of the foregoing, the market for Canaan ADRs promptly incorporated

current information regarding the Company from publicly available sources and reflected such

information in the prices of the ADRs.  Under these circumstances, all those who transacted in

Canaan ADRs during the Class Period suffered similar injury through their transactions in Canaan ADRs at artificially inflated prices and a presumption of reliance applies.

37.     Without knowledge of the misrepresented or omitted material facts, Plaintiff and other Class members purchased or acquired Canaan ADRs between the time defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed. Accordingly, Plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for Canaan ADRs, and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

38.     Plaintiff incorporates ¶¶1-37 by reference.

39.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Canaan shares during the Class Period.

41.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Canaan shares.  Plaintiff and the Class would not have purchased Canaan shares at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

**COUNT II**

**For Violation of §20(a) of the 1934 Act**
**Against All Defendants**

42.     Plaintiff incorporates ¶¶1-41 by reference.

43.     The Individual Defendants acted as controlling persons of Canaan within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of Canaan stock, the Individual Defendants had the power and authority to cause Canaan to engage in the wrongful conduct complained of herein.  Canaan controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

**CLASS ACTION ALLEGATIONS**

44.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all purchasers of Canaan ADRs during the Class Period (the "Class").  Excluded from the Class are defendants.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Canaan has over 2.4 billion shares outstanding, owned by hundreds if not thousands of persons.

46.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the prices of Canaan ADRs were artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

47.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from defendants' wrongful conduct.

48.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff as a lead plaintiff and approving its selection of lead counsel;

B.     Awarding Plaintiff and the members of the Class damages, including interest;

C.     Awarding Plaintiff's reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

- 16 -

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  April 15, 2021                    ROBBINS GELLER RUDMAN & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          MARY K. BLASY


                                          */s/ Samuel H. Rudman*
                                          SAMUEL H. RUDMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          mblasy@rgrdlaw.com

                                          JOHNSON FISTEL, LLP
                                          RALPH M. STONE
                                          1700 Broadway, 41st Floor
                                          New York, NY 10019
                                          Telephone: 212/292-5690
                                          212/292-5680 (fax)
                                          ralphs@johnsonfistel.com

                                          *Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Jason Denny ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

<em>See</em> attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of April, 2021.

DocuSigned by:

D5E8163872184D6...

_____

Jason Denny

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 3/4/2021 | 100 | $20.50 |