**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON DENNY, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>CANAAN INC., NANGENG ZHANG and TONG HE,<br><br>     Defendants. | Case No.: 1:21-cv-03299-JPC-SDA<br><br><u>CLASS ACTION</u><br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br><br><u>JURY TRIAL DEMANDED</u> |

Court-appointed Lead Plaintiffs Bill Lu ("Lu") and Liying Huang ("Huang," and together with Lu, "Lead Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, allege the following upon information and belief, except as to those allegations concerning Lead Plaintiffs, which are alleged upon personal knowledge.  Lead Plaintiffs' information and belief is based upon, *inter alia*, their counsel's investigation, which includes without limitation, review and analysis of:  (i) regulatory filings made by Canaan Inc. ("Canaan" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, news articles, and other public statements issued by or concerning Canaan and the Individual Defendants (defined below); (iii) transcripts of investor calls with Canaan senior management; (iv) analysts' reports and advisories about the Company; and (v) other publicly available information.  Counsel's investigation into the factual allegations contained herein is continuing, and many of the facts supporting those allegations are known only to Defendants (defined below) and are exclusively within their custody or control.  Lead Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.      Lead Plaintiffs bring this federal securities class action on behalf themselves and a class consisting of all purchasers of the American Depositary Shares ("ADSs")[1] of Canaan between February 10, 2021 and April 9, 2021, inclusive (the "Class Period"), against Canaan and certain of its senior officers (collectively, "Defendants").  Lead Plaintiffs bring this action under

---

[1] Sometimes the terms ADS and ADR (American Depository Receipt) are used interchangeably. The entire issuance of equity shares of a non-U.S. company is an ADR and the individual underlying shares available for purchase are ADSs.

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2.      Canaan is a Cayman Islands holding company for its subsidiaries in Hong Kong and the Peoples Republic of China ("PRC"), with the Company's headquarters located in the PRC. Canaan's ADSs are publicly traded in the U.S. on the NASDAQ Global Market ("NASDAQ"). The Company manufactures and sells bitcoin mining machines, primarily in the PRC.

3.      Canaan's fiscal year 2020 ended on December 31, 2020.  On February 9, 2021, nearly six weeks later, Canaan announced that its former Chief Financial Officer ("CFO"), Quanfu Hong ("Hong"), had suddenly resigned, effective immediately, providing no explanation as to why, citing only "personal reasons."

4.      To allay suspicions about Hong's sudden resignation, the next day, February 10, 2021, Canaan issued a press release announcing that its "revenue visibility ha[d] improved substantially" and making other positive statements about purported visibility into increases in the size and quality of orders the Company had been receiving for its bitcoin mining machines, including that the "revenue visibility" was due to large "prepayment" orders.

5.      Defendants knew that the positive statements regarding increases in the size and quality of orders were false and misleading, since by February 10, 2021, Defendants knew that the fourth quarter 2020 financial results were much worse than expected and that Canaan had been experiencing significant ongoing supply chain disruptions during the fourth quarter 2020. Defendants also knew that the touted pre-sale orders were locked in at lower prices than the re-bounding bitcoin market prices during the third and fourth quarters of 2020, leaving investors with the false impression that revenue in the fourth quarter 2020 would be solid.

6. Canaan's February 10, 2021 statements were heralded by the investment community in light of former CFO Hong's November 30, 2020 statements that "the demand for mining machines in the market continued to rebound during the third quarter [of 2020], and" that Canaan had "received *a large number of pre-sale orders which [were] scheduled for delivery starting in the fourth quarter of 2020*."[2]  Predictably, the market reacted positively to these statements, driving up the market price for Canaan's ADSs from their open of $6.91 each on Monday, February 8, 2021, to close at $13.04 each on Friday, February 12, 2021, an *increase of nearly 90%*, *at a time when other bitcoin stocks were down*.

7. Two months later, on April 9, 2021, Canaan's Chief Executive Officer ("CEO"), defendant Nangeng Zhang ("Zhang"), stated in an interview that Canaan had "*secured chips from a number of fabrication plants in advance of the worldwide shortage of processors—which has impacted the gaming, computing, and automotive industry, as well as Bitcoin mining*."

8. These statements were knowingly false and misleading.  In truth, Canaan's fourth quarter 2020 sales had suffered greatly, in part due to the supply shortage of chips.  Thus, the positive statements Defendants issued during the Class Period about the Company's business metrics and financial prospects concealed (1) ongoing supply chain disruptions, and (2) that the Company's touted pre-sale orders were locked in at lower prices than the re-bounding bitcoin market prices during the third and fourth quarters of 2020, reducing the Company's ability to earn revenue from the increasing market prices during the fourth quarter 2020.  Canaan's fourth quarter 2020 computing power sold had, in reality, declined more than 93% year-over-year compared to its fourth quarter fiscal year 2019 sales and more than 93% quarter-over-quarter compared to its third quarter 2020 sales.

---

[2] Unless otherwise stated, all emphasis is added.

9.     ***Just three days after*** defendant Zhang touted Canaan's chip supply strategy, on Monday, April 12, 2021, before the opening of trading, Canaan issued a press release disclosing its fourth quarter and year-end 2020 financial results, including a 93% year-over-year decrease in computing power sold and a 92% decrease year-over-year in total net revenue for the quarter.

10.     On this news, the market price of Canaan's ADSs collapsed from their close of $18.67 per ADS on April 9, 2021, to close at $13.14 per ADS on April 12, 201, ***a decline of nearly 30%***, on unusually high trading volume, more than three times the average daily volume over the preceding ten trading days.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this District under Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Many of the acts and omissions that constitute the alleged violations of law, including the dissemination to the public of untrue statements of material facts, occurred in this District.  Canaan's shares are traded on the NASDAQ exchange, which is based in this District.  Canaan's depository bank for its ADSs, The Bank of New York Mellon, which provides substantial investor relations services to the Company, is located in this District.

14.     In connection with the acts, conduct, and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## THE PARTIES

### A.     Lead Plaintiffs

15.     Lead Plaintiffs Lu and Huang (husband and wife) purchased Canaan ADSs at artificially inflated prices during the Class Period as set forth in the certifications previously filed with the Court (ECF No. 47-1) and incorporated by reference herein.  Lu and Huang suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.     Defendants

16.     Defendant Canaan is a Cayman Islands corporation with principal executive offices located at 21st Floor, Building 1, Yard 1, No. 81 Beiqing Road, Haidian District, Beijing, PRC. Canaan's ADSs trade on the NASDAQ under the ticker symbol "CAN."

17.     Canaan incorporated its Cayman Islands holding company in February 2018 and operates through a series of subsidiaries in Hong Kong and the PRC:



Canaan consummated its initial public offering in the United States on November 21, 2019.

18.     Defendant Zhang is the founder of the Company and has served as its Chairman of the Board of Directors (the "Board") and as CEO since inception.

19.     Defendant Tong He ("He") has served as Canaan's Director of Finance since July 2020 and served as acting CFO from February 2021 to August 2021.

20.     Zhang and He are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants, because of their positions within the Company, possessed the power and authority to control the contents of Canaan's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Defendant Canaan is liable for the acts of the Individual Defendants under the doctrine of *respondeat superior* and common law because all the wrongful acts complained of herein were carried out withing the scope of their employment.  The scienter of the Individual Defendants is similarly imputed to Canaan under agency principles.

## RELEVANT BACKGROUND

### A.      The Company and its Business

23.     Canaan's main line of business is manufacturing and selling "bitcoin" or cryptocurrency mining equipment.  Cryptocurrency is a digital money which is managed and exchanged through the internet in "blockchain" networks.  Although not yet a widely accepted payment method, such currency can be used to purchase gift cards for certain stores and is also an investment option.  Cryptocurrency depends on mining to increase the currency.  While individuals were initially able to "mine" on home computers, with increasing competition and the use of more advanced technology, mining is now mainly done by companies.

24.    Blockchain networks emerged in the late 2000s as alternatives to centralized banking systems.  In a blockchain network, transactions are recorded publicly in a "ledger," and linked together with previous transactions (the "chain").  In order to be added to the "chain," transactions must first be verified as there is no centralized banking system to do so.  Miners are the ones who verify the transactions in the blockchain ledger, earning cryptocurrency for doing so. Miners, in effect, are compensated for working as auditors.

25.    There are two common types of verification methods in blockchain networks, each completed by individuals (or computers, *i.e*, "miners").  With the "proof of work" method, new transactions ("blocks") are first consolidated and encrypted through the application of an algorithm which converts text into a random sequence of numbers and letters ("hashing").  Then, miners compete to solve complex mathematical puzzles to verify the transactions which are then added to the chain.  The miner that solves the puzzle is rewarded with an issuance of cryptocurrency from the network.  Proof of work verifications require copious amounts of power and computing resources.  With the "proof of stake" method, a user commits to the network with a deposit of cryptocurrencies and then is randomly assigned tasks or verifications with the number of assignments based on how much they deposited as their "stake."

26.    Canaan's bitcoin mining machines are offered under the AvalonMiner brand that features the Company's proprietary application specific integrated circuits ("ASICs"), chips the Company claims have stronger computing power than certain other types used in mining machines.

27.    Canaan sells the mining machines, as well as mining machine parts.  Sales of bitcoin mining machines and parts comprised 99.7%, 97.7%, and 94.4% of Canaan's total revenue for 2018, 2019, and 2020, respectively.  The Company's customers are primarily located in the

PRC with revenue from customers in the PRC accounting for 76.1%, 74.8%, and 84.8% of total revenue for 2018, 2019, and 2020, respectively.

      **B.**      **Defendants' Create a Misleading Impression of a Positive Fourth Quarter 2020 Prior to and During the Class Period**

      28.      On November 30, 2020, Defendants issued a press release, attached as Exhibit 99.1 to a Form 6-K filed with the SEC, titled "Canaan Inc. Reports Unaudited Third Quarter 2020 Financial Results," announcing the Company's financial results for the quarter-ended September 30, 2020. The press release reported that Canaan had sold "2.9 million Thash/s, representing a year-over-year decrease of 20.7% from 3.7 million Thash/s in the same period of 2019 and a quarter-over-quarter increase of 13.4% from 2.6 million Thash/s in the second quarter of 2020."[3] Total net revenues had decreased 75.7% year-over-year as well from RMB670.6[4] million ($105.4 million) during the third quarter of 2019 to RMB163.0 million ($24 million) for the third quarter 2020, with an 8.5% quarter-over-quarter decrease. The press release went on to emphasize that Canaan had received a large number of pre-sale orders scheduled for delivery starting in the fourth quarter 2020, stating, in relevant part:

> Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "During the third quarter of 2020, we remained undeterred by the pandemic to strengthen our research and development capabilities, expand our AI business, and execute new business initiatives. By leveraging our enhanced R&D capabilities in the third quarter, we launched our A1246 product series, which continues to lead the industry with its energy efficiency, computing power, and unit cost. In addition, we have also accelerated the monetization of our AI business through our partnerships with a number of companies in various industries, such as online education and smart city solutions. In the third quarter of 2020, for example, we implemented our K210 AI chips in hardware sensors from our partner to better ensure the proper execution of social distancing practices in response to the outbreak of COVID-19. With new generations of mining machines and AI chips in the pipeline, we are confident that the enhanced performance of our new

---

[3] "Thash" refers to Terahash, the measuring unit of the processing power of a bitcoin mining machine. "Thash/s" refers to the measuring unit of hash rate.

[4] "RMB" or "Renminbi" are the legal currency of China.

products will continue to bolster our competitive advantages and solidify our market leadership going forward."

Mr. Quanfu Hong, Chief Financial Officer of Canaan, stated, "The pandemic and resulting macroeconomic uncertainties continued to impact the production capacity of the global IC industry in the third quarter of 2020. *However, the demand for mining machines in the market continued to rebound during the third quarter, and we have received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020.* Looking ahead, we remain committed to investing in areas that will further strengthen our collaboration with established IC manufacturers, enhance our inventory management, streamline our research and development initiatives, and generate lasting value for our shareholders."

29.     The above statements remained alive and uncorrected in the market throughout the Class Period.

30.     On February 9, 2021, Canaan announced that former CFO Hong had suddenly resigned effective immediately, providing no explanation as to why and citing only "personal reasons."

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING
## STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

31.     Canaan's fourth quarter and fiscal year ended on December 31, 2020.  With the fourth quarter and year already completed and Canaan's dismal results known to Defendants, during the Class Period Defendants misled the market and investors as to the Company's financial success for the 2020 year-end.

32.     On February 10, 2021, the first day of the Class Period, six weeks after the fourth quarter and full year 2020 ended, and just one day after the abrupt departure of the Company's CFO, Defendants issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC and signed by defendant Zhang, titled "Canaan Announces Improved Revenue Visibility in 2021," claiming that Canaan's "revenue visibility ha[d] improved substantially," and stating, in relevant part:

Canaan . . . today announced that *its revenue visibility has improved substantially in 2021 as a result of attaining purchase orders totaling more than 100,000 units of bitcoin mining machines from customers in North America.  Many of those purchase orders were placed with prepayment and will likely occupy the Company's current manufacturing capacity entirely for the full year of 2021 and beyond.*  With those fully committed purchase orders, the Company now enjoys a much higher degree of revenue visibility and more precise forecast.  As such, the *Company is able to leverage such information and additional liquidity to conduct its component purchases, production scheduling*, warehousing and logistics.

Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "We have changed our operations model in 2021. Previously we were selling bitcoin mining machines mostly to individual mining operators who may not have longer-term planning.  In late 2020, we shifted our client base to mostly publicly traded companies and bitcoin-focused investment funds which tend to place sizable orders with longer-term commitment.  *As a result, we can now forecast our revenue much more precisely.  Our increased revenue visibility is not only enabling us to plan our production and logistics well in advance, but also helping us to optimize our cost structure and improve our customer satisfaction rate.  Above all, it should help us achieve profitable growth for the long run.*"

33.     The press release concealed the fourth quarter's known dismal financial performance, while promoting Canaan's expected future success.  Predictably, the market reacted positively to these statements, especially in light of the November 30, 2020 comments that demand was strong for the Company's products and services and that a significant number of pre-orders had begun shipping in the fourth quarter of 2020.  The market price of Canaan's ADSs increased from their open of $6.91 each on Monday, February 8, 2021, to close at $13.04 each on Friday, February 12, 2021, *an increase of nearly 90%.*

34.     With the February 10, 2021 positive news release, *The Motley Fool* reported that Canaan's share price "soared today due to upbeat financial guidance. . . .  [T]he stock was up 13%, even though Bitcoin and other Bitcoin stocks were down sharply."  The same article noted that "this financial update is oddly timed.  Yesterday, Canaan announced its former CFO abruptly left the company for personal reasons.  You wouldn't expect such an important financial announcement just one day after a CFO's departure."

35.     The Individual Defendants, as the highest-ranking officers of the Company, had ultimate authority and control over Canaan's public statements, were involved in drafting, reviewing, and/or disseminating the false and misleading statements that were issued in the above press release, approved or ratified these statements and, therefore, adopted them as their own.

36.     On April 9, 2021, an interview with defendant Zhang was published in *Decrypt* magazine in an article titled "Canaan CEO Is Bullish on Bitcoin Mining Ahead of Earnings – The Nasdaq-listed manufacturer of crypto mining hardware has seen its stock jump almost 1000% in six months."  The article opened with the statement that Canaan "will disclose Q4 and full 2020 results, and the outlook is rosy."

37.     Zhang was quoted in the article, emphasizing that the global shortage of chips had not negatively impacted Canaan, stating in relevant part:

> **But Canaan anticipates it will have no problem fulfilling its bulging order book. Zhang said that the company had secured chips from a number of fabrication plants in advance of the worldwide shortage of processors—which has impacted the gaming, computing, and automotive industry, as well as Bitcoin mining.**
>
> **"Our approach is one of a multi-fab strategy, where we collaborate and work with a number of leading chip manufacturers to reduce supply-chain risks,"** he explained.
>
> **This has allowed Canaan to continue to produce its popular Avalon miners on a scale to meet market demand.**

38.     Contrary to the statements above, Canaan had been experiencing supply chain disruptions and the Company's fourth quarter 2020 earnings were far from "rosy."  The true facts, which were known or recklessly disregarded by Defendants but concealed from the investing public during the Class Period, were that:

> (a)     Canaan had experienced significant ongoing supply chain disruptions during the fourth quarter 2020;

(b)     the Company's touted pre-sale orders were locked in at lower prices than the re-bounding bitcoin market prices during the third and fourth quarters of 2020, reducing the Company's ability to earn revenue from the increasing market prices during the fourth quarter 2020;

(c)     as a result of the foregoing, Canaan's fourth quarter 2020 sales and sales revenue had declined dramatically; and

(d)     that as a result of the foregoing, Canaan was not on track to achieve the strong financial prospects it had led the market to believe.

### DISCLOSURES AT THE END OF THE CLASS PERIOD

39.     On Monday, April 12, 2021, before the opening of trading, Defendants issued a press release announcing Canaan's financial results for the fourth quarter and year ending December 31, 2020, attached as Exhibit 99.1 to a Form 6-K filed with the SEC, titled "Canaan Inc. Reports Unaudited Fourth Quarter and Full Year 2020 Financial Results." The press release disclosed abysmal fourth quarter and full year 2020 financial results, stating in relevant part:

**Fourth Quarter 2020 Operating and Financial Highlights**

**Total computing power sold** was 0.2 million Thash/s, representing a year-over-year decrease of 93.1% from 2.9 million Thash/s in the same period of 2019 and a quarter-over-quarter decrease of 93.1% from 2.9 million Thash/s in the third quarter of 2020.

**Total net revenues** decreased to RMB38.2 million (US$5.9 million) from RMB463.2 million in the same period of 2019 and RMB163.0 million in the third quarter of 2020.

**Gross profit** was RMB9.1 million (US$1.4 million) compared to a gross loss of RMB673.4 million in the same period of 2019 and a gross loss of RMB17.0 million in the third quarter of 2020.

**Net loss** narrowed to RMB72.0 million (US$11.0 million) from RMB798.2 million in the same period of 2019 and RMB86.4 million in the third quarter of 2020.

**Non-GAAP adjusted net loss** narrowed to RMB73.1 million (US$11.2 million) from RMB750.5 million in the same period of 2019 and RMB84.8 million in the third quarter of 2020.

**Full Year 2020 Operating and Financial Highlights**

**Total computing power sold** was 6.6 million Thash/s, representing a year-over-year decrease of 37.1% from 10.5 million Thash/s in 2019.

**Total net revenues** decreased to RMB447.7 million (US$68.6 million) from RMB1,422.6 million in 2019.

**Gross profit** was RMB37.8 million (US$5.8 million) compared to a gross loss of RMB516.0 million in 2019.

**Net loss** narrowed to RMB215.1 million (US$33.0 million) from RMB1,034.5 million in 2019.

**Non-GAAP adjusted net loss** narrowed to RMB212.1 million (US$32.5 million) from RMB764.3 million in 2019.

Mr. Nangeng Zhang, Chairman and Chief Executive Officer of Canaan, commented, "Although the outbreak of COVID-19 *caused supply chain disruptions and thus negatively impacted our revenues in the fourth quarter of 2020*, our market leadership has enabled us to attain US$174 million of contracted orders with US$66million of cash advance from customers as of December 31, 2020, thus laying a solid foundation for substantial revenue growth in 2021. During the fourth quarter, we fueled our overseas expansion, invested in our R&D capabilities, refined our supply chain management, and started mass production of our next-generation A12 series of bitcoin mining machines. All of those efforts have enabled us to begin delivering theA12 series of products at a large scale in the first quarter of 2021. In addition to fortifying our core mining machine business, we also achieved meaningful progress in our AI and Artificial IoT segments, both of which we believe have solid growth potential. After deep analysis of specific application use cases and the current market demand for computing power, we designed two new series of AI chips that will be in production in the second half of 2021."

Mr. Tong He, Chief Financial Officer of Canaan, stated, "***Due to supply chain disruptions, as the price of Bitcoin rallied in late 2020***, we experienced a surge of demand for high-quality mining machines both in and outside of China. By leveraging our established market presence, we further optimized our international customer base and secured a large number of pre-orders from clients in both domestic and international markets, and streamlined our supply chain management to optimize our cash flow. Our abundant cash reserve gives us the confidence to expand our global client service coverage and develop more first-rate products going forward. Meanwhile, the rapid development of our new business initiatives should help us to launch into a new growth cycle and deliver increasing value to both our customer and shareholders over the long term."

40.     That same morning, Defendants held an earnings conference call to discuss the fourth quarter and year end 2020 financial results.  During the call, defendant Zhang stated[5] that Canaan experienced "a severe supply shortage" of "mining machine" chips during the fourth quarter 2020.  In addition, Zhang admitted that "since the second half of last year and the first half of this year, most of the mining machines were sold as futures contracts, which had a fixed price. And the prices were actually lower than our existing machines."  Defendants had previously stated to investors that the price of bitcoin mining machines typically increased with the price of bitcoin, which had risen dramatically in the fourth quarter 2020, omitting the important fact that pre-sale orders or futures contracts were locked at lower prices and Canaan could not and would not be able to take advantage of rising bitcoin prices.

41.     On this news, the market price of Canaan ADSs collapsed from a close of $18.67 per ADS on April 9, 2021, to close at $13.14 per ADS on April 12, 2021, ***a decline of nearly 30%***, on unusually high volume of approximately 60 million ADSs trading, or more than three times the average daily volume over the preceding ten trading days.

## ADDITIONAL SCIENTER ALLEGATIONS

42.     As alleged herein, each of the Individual Defendants acted with scienter in that they knowingly or recklessly disregarded that the information disseminated to the public contained materially false and/or misleading information and omitted material information.  Throughout the Class Period, the Individual Defendants acted intentionally or in such a deliberately reckless manner as to constitute a fraud upon Lead Plaintiffs and the Class.  Such actions caused the price of Canaan ADSs to be artificially inflated.

---

[5] Canaan's Secretary to the Board, Shaoke Li, translated for defendant Zhang on the conference call.

43.    In their respective roles as senior officers of Canaan, the Individual Defendants were able to, and did, control the information disseminated to the investing public in the Company's various SEC filings, press releases, and other public statements during the Class Period.  As a result, each had the opportunity to falsify the information provided to the public regarding Canaan's business and performance.

44.    Numerous facts including those detailed above, considered collectively, support a strong inference that Defendants knew or, at a minimum, were severely reckless in not knowing, the true undisclosed facts when they made their false and misleading representations to investors.

45.    ***First***, each of the Individual Defendants made detailed statements based on purportedly personal knowledge regarding the Company's sales of bitcoin mining machines and its supply chain.  Defendants discussed the bitcoin industry and its mining machines on every conference call with investors, repeatedly emphasizing its importance during the Class Period. Defendants also directly discussed the supply chain repeatedly in public statements.  As a result, the Individual Defendants were intently focused on Canaan's bitcoin mining machines and its related supply chain before and throughout the Class Period, and were intimately familiar with the Company's actual performance and sales, as well as chip supplies, at the time they made their statements.

46.    ***Second***, the timing of the statements supports an inference of knowledge. Canaan's fourth quarter 2020 began on October 1, 2020 and ended on December 31, 2020. Defendants' misleading statements, omitting the true conditions and issues the Company faced with its supply chain and resulting disappointing fourth quarter 2020 results, were relayed ***after*** quarter end in February and April 2021.  Defendant Zhang's specific denial of any supply chain problems was issued ***a mere three days before*** the disclosure admitting the exact opposite.  As the

highest executives in the Company, the Individual Defendants knew, or were reckless in not knowing, the previous quarter's financial results and reasons for the results months later.

47.    ***Third***, Canaan's net revenue for the fourth quarter of 2020 ***declined by 77% quarter over quarter and 92% year over year.*** The magnitude of Canaan's revenue decline in the fourth quarter 2020 makes it simply implausible that the Individual Defendants did not know of the negative financial results and causes of those results during the Class Period.

48.    ***Fourth***, the timing and circumstances of the departure of Canaan's former CFO supports an inference of scienter. CFO Hong suddenly resigned just over a month after the end of the fourth quarter 2020 and the day before the beginning of the Class Period. As detailed above, the misleading statements made on the first day of the Class Period were noted by *The Motley Fool* as highly unusual, particularly in light of Hong's resignation.

49.    ***Fifth***, Canaan's bitcoin mining machines were the single largest income producing segment for the Company, comprising 94.4% of its total revenue in 2020. Canaan is a small Company with only 248 employees as of December 31, 2020, and with only 47 employees in management. The Company has also stated, "[s]ince inception, the growth and expansion of [its] business operations have been dependent upon the business strategies and foresight of [its] senior management" and that its "future success depends, in large part, on the continued contributions of [its] senior management team, ***specifically, Mr. Nangeng Zhang***."

50.    ***Sixth***, Zhang founded the Company and not only served as its highest-ranking officer and Chairman of the Board, but he also controlled 69.4% of the voting power as of December 31, 2020, owning all of the Company's Class B ordinary shares.

51.    ***Seventh***, Canaan possessed scienter. The Individual Defendants were senior executives and/or directors of Canaan who acted with apparent authority to speak on behalf of the

Company and their statements were made with the imprimatur of the Company that selected them to speak on its behalf. The Individual Defendants' actions and scienter are imputable to Canaan at all times during the Class Period.

## LOSS CAUSATION

52.    During the Class Period, as detailed herein, Defendants engaged in a fraudulent scheme to deceive the market that artificially inflated the price of Canaan ADSs and operated as a fraud or deceit on Class Period purchasers of Canaan ADSs by failing to disclose and misrepresenting the adverse facts detailed herein, including that: (1) Canaan had experienced significant ongoing supply chain disruptions during the fourth quarter 2020; (2) the Company's touted pre-sale orders were locked in at lower prices than the re-bounding bitcoin market prices during the third and fourth quarters of 2020, reducing the Company's ability to earn revenue from the increasing market prices during the fourth quarter 2020; (3) as a result of the foregoing, Canaan's fourth quarter 2020 sales and sales revenue had declined dramatically; and (4) as a result of the foregoing, Canaan was not on track to achieve the strong financial prospects it had led the market to believe.

53.    As a result of their purchases of Canaan's ADSs during the Class Period at artificially inflated prices due to Defendants' misrepresentations and omissions, Lead Plaintiffs and the Class suffered economic loss, *i.e.,* damages, under the federal securities laws. Defendants' materially false and misleading statements and omissions of adverse facts caused Canaan's ADSs to trade at artificially inflated levels throughout the Class Period, reaching as high as $39.10 per ADS on March 12, 2021, the highest Canaan ADSs have ever traded since the Company went public on the NASDAQ.

54.    The artificial inflation created by Defendants' misrepresentations and omissions was removed when the Company announced its fourth quarter and year end 2020 financial results

on April 12, 2021, including that the weak results were in part due to supply chain issues. *See* ¶¶ 39-41. Following this disclosure, Canaan's ADS price declined by $5.53 per share, or nearly 30%, on heavier than usual trading volume of approximately 60 million shares, to close on April 12, 2021 at $13.14 per ADS.

55.    The timing and magnitude of the price decline in Canaan's ADSs on the date of the disclosure above negates any inference that the losses suffered by Lead Plaintiffs and the Class were caused by changed market conditions, macroeconomic or industry facts, or Company-specific facts unrelated to Defendants' fraudulent conduct.

56.    The damages suffered by Lead Plaintiffs and the Class were the direct and proximate result of Defendants' materially false and misleading statements and omissions that artificially inflated the Company's ADS price and the subsequent significant decline in the value of the Company's ADSs when the truth concerning Defendants' prior misrepresentations and fraudulent conduct was revealed.

## NO SAFE HARBOR

57.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the statements alleged to be false and/or misleading herein. The statements complained of herein were historical statements or statements of then-existing facts and conditions at the time the statements were made and/or were material omissions.

58.    To the extent that statements alleged to be false and/or misleading could be construed as forward-looking, the statutory safe harbor does not apply to such statements because they were not sufficiently identified as "forward-looking statements" when made, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements, and/or Defendants had actual

18

knowledge that the forward-looking statements were materially false or misleading at the time each such statement was made.

**PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

59.    Lead Plaintiffs and the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

60.    At all relevant times, the market for Canaan's ADSs was open, well-developed, and efficient.  Lead Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Canaan's ADSs were traded on the NASDAQ, a highly efficient and automated market, and covered by analysts;

- the Company filed periodic public reports with the SEC and regularly communicated with investors via market-communication mechanisms, including through regular dissemination of press releases;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- Lead Plaintiffs and members of the Class purchased, acquired, and/or sold Canaan ADSs between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.    As a result of Defendants' materially false and/or misleading statements and material omissions, Canaan ADSs traded at artificially inflated prices during the Class Period.

Lead Plaintiffs and the Class purchased or otherwise acquired the Company's ADSs relying on the integrity of the market price of such securities and on publicly available market information relating to Canaan and have been damaged thereby.

62.    During the Class Period, the artificial inflation of the value of Canaan's ADSs was caused by the material misrepresentations and omissions particularized in this Complaint, thereby causing the damages sustained by Lead Plaintiffs and the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about the Company's business, prospects, and operations, causing the price of the Company's ADSs to be artificially inflated at all relevant times.  When the truth was disclosed, it drove down the value of the Company's ADSs, causing Lead Plaintiffs and other Class members that had purchased the ADSs at artificially inflated prices to be damaged as a result.

63.    Based upon the foregoing, Lead Plaintiffs and the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLASS ACTION ALLEGATIONS

64.    Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all purchasers of the ADSs of Canaan between February 10, 2021 and April 9, 2021, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, Canaan's affiliates and subsidiaries, the officers and directors of the Company and its affiliates and subsidiaries at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any excluded person or entity has or had a controlling interest.

65.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Canaan's ADSs were actively traded on the NASDAQ.  As of December 31, 2020, Canaan had approximately 2 billion Class A ordinary

shares[6] issued and outstanding.  While the exact number of Class members is unknown to Lead Plaintiffs at this time and can be ascertained only through appropriate discovery, Lead Plaintiffs believe that there are at least thousands of members of the proposed Class.  Record owners and other members of the Class can be identified from records maintained by Canaan or its transfer agent and notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.    Lead Plaintiffs' claims are typical of the claims of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.    Lead Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class and securities litigation.  Lead Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

68.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made (or omissions) by Defendants to the investing public during the Class Period misrepresented (or omitted) material facts about the business, operations, and management of Canaan;

- whether Defendants acted knowingly or recklessly in issuing false and misleading statements (or omissions);

- whether the prices of Canaan ADSs during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

---

[6] Each ADS represented 15 Class A ordinary shares and therefore there were approximately 13.3 million ADSs.

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I
**For Violations of Section 10(b) of the Exchange Act
and SEC Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

70.    Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

71.    This Count is asserted on behalf of all members of the Class against all Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

72.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct, which was intended to, and throughout the Class Period, did:  (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Canaan ADSs; and (iii) cause Lead Plaintiffs and other members of the Class to purchase or otherwise acquire Canaan ADSs at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

73.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material

facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's ADSs during the Class Period in an effort to maintain artificially high market prices for Canaan ADSs.

74.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal and misrepresent adverse material information about the Company's business, operations, and financial results, as specified herein.

75.    Pursuant to the above plan, scheme, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Canaan ADSs.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented Canaan's true condition.

76.    The Company and the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Lead Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of

the Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

77.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As senior officers and/or directors of Canaan, the Individual Defendants had knowledge of the details of Canaan's internal affairs.

78.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Canaan.  As senior officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Canaan's businesses, operations, financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Canaan's ADSs was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Canaan's business and financial condition which were concealed by Defendants, Lead Plaintiffs and the Class purchased or otherwise acquired Canaan ADSs at artificially inflated prices and relied upon the price of the ADSs, the integrity of the market for the ADSs and/or upon statements disseminated by Defendants, and were damaged thereby.

79.     During the Class Period, Canaan ADSs were traded on an active and efficient market.  Lead Plaintiffs and the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Canaan ADSs at prices artificially inflated by Defendants' wrongful conduct.  Had Lead Plaintiffs and the Class known

the truth, they would not have purchased or otherwise acquired said ADSs, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Lead Plaintiffs and the Class, the true value of Canaan ADSs was substantially lower than the prices paid by Lead Plaintiffs and the Class.  The market price of Canaan's ADSs declined sharply upon public disclosure of the facts alleged herein to the injury of Lead Plaintiffs and the Class.

80.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.

81.    As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiffs and the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's ADSs during the Class Period, upon the disclosure that the Company had been disseminating material misrepresentations to the investing public.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

82.    Lead Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.    During the Class Period, the Individual Defendants participated in the operation and management of Canaan, and conducted and participated, directly and indirectly, in the conduct of Canaan's business affairs.  Because of their senior positions, they knew the adverse non-public information about Canaan's misstatements.

84.    As senior officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Canaan's financial condition and results of operations, and to correct promptly any public statements issued by Canaan which had become materially false or misleading.

85.    Because of their positions of control and authority as senior officers and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings which Canaan disseminated in the marketplace during the Class Period.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Canaan to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Canaan within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Canaan's ADSs.

86.    Each of the Individual Defendants, therefore, acted as a controlling person of Canaan.  By reason of their senior management positions and/or being a director of Canaan, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Canaan to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Canaan and possessed the power to control the specific activities which comprise the primary violations about which Lead Plaintiffs and the other members of the Class complain.

87.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

**WHEREFORE**, Lead Plaintiffs pray for judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Lead Plaintiffs as the class representatives and Lead Counsel as class counsel;

B.      Awarding compensatory damages in favor of Lead Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

C.      Awarding Lead Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as Lead Plaintiffs' reasonable attorneys' fees with interest, expert fees, and other costs; and

D.      Awarding such equitable, injunctive, or other and further relief as this Court may deem just and proper.

### **DEMAND FOR TRIAL BY JURY**

Lead Plaintiffs hereby demand a trial by jury.

Dated:  February 7, 2022                    Respectfully submitted,

                                            **BRAGAR EAGEL & SQUIRE, P.C.**

                                            */s/ Lawrence P. Eagel*
                                            Lawrence P. Eagel
                                            Melissa A. Fortunato
                                            Marion C. Passmore
                                            810 Seventh Avenue, Suite 620
                                            New York, New York 10019
                                            Telephone: (212) 308-5888
                                            Facsimile: (212) 504-3260
                                            Email: eagel@bespc.com
                                                     fortunato@bespc.com
                                                     passmore@bespc.com

                                            *Lead Counsel for Lead Plaintiffs*
                                            *and the Proposed Class*