**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JASON DENNY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    -against-<br><br>CANAAN INC., NANGENG ZHANG, AND TONG HE,<br><br>      Defendants. | Case No. 1:21-cv-03299 (JPC) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CANAAN INC.'s MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Dated:  April 8, 2022

O'MELVENY & MYERS LLP
Daniel L. Cantor
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 326-2000
Email: dcantor@omm.com

William K. Pao (*pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone: (213) 430-6000
Email: wpao@omm.com

*Attorneys for Defendant Canaan Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 8

    I.      Plaintiff fails to allege a materially false or misleading statement. ....................... 8

           A.     The November 30, 2020 press release was not issued within the class period and is not false or misleading in any event. ........................... 9

           B.     Canaan's February 10, 2021 statements were not false or misleading. ................................................................................................. 10

           C.     The April 9, 2021 *Decrypt* article contained only a single challenged statement allegedly made by Canaan, and it was not false or misleading. ................................................................................. 14

    II.     Plaintiff fails to plead any inference of scienter. ................................................. 17

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 19

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ......................................................................... 9, 13, 17

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976).................................................................................................. 7

*Frank H. Cobb, Inc. v. Cooper Cos.*,
1992 WL 77600 (S.D.N.Y. Mar. 23, 1992) ............................................................. 15

*Hershfang v. Citicorp*,
767 F. Supp 1251 (S.D.N.Y. 1991) .......................................................................... 15

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018) ...................................................................... 16

*In re Duane Reade Inc. Sec. Litig.*,
2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003)........................................................ 19

*In re Ferroglobe PLC Sec. Litig.*,
2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020).............................................. 12, 13, 14

*In re Garrett Motion Inc. Sec. Litig.*,
2022 WL 976269 (S.D.N.Y. 2022)............................................................................ 9

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998) ................................................................................. 9, 10

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................................... 7

*In re Nielsen Holdings PLC Sec. Litig.*,
510 F. Supp. 3d 217 (S.D.N.Y. 2021) ...................................................................... 19

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
2021 WL 4443562 (S.D.N.Y. Sept. 28, 2021)................................................... 11, 13

*In re Sanofi-Aventis Sec. Litig.*,
774 F. Supp. 2d 549 (S.D.N.Y 2011) ...................................................................... 10

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ............................................................................ 8, 13, 16

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)......................................................... 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lau v. Opera Ltd.*,
527 F. Supp. 3d 537 (S.D.N.Y. 2021) ........................................................................ 13

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ....................................................................................... 7

*Leventhal v. Tow*,
48 F. Supp. 2d 104 (D. Conn. 1999) .......................................................................... 18

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ...................................................................................................... 8

*Milberg v. Western Pac. R. Co.*,
51 F.R.D. 280 (S.D.N.Y. 1970) ................................................................................. 15

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ....................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................................................... 16

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010) ....................................................................... 17

*Resnik v. Swartz*,
303 F.3d 147 (2d Cir. 2002) ....................................................................................... 8

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ....................................................................................... 14

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ..................................................................................... 8, 18

*Shields v. Citytrust Bancorp., Inc.*,
25 F.3d 1124 (2d Cir. 1994) ....................................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ......................................................................................... 8, 17, 19

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...................................................................................... 20

**Statutes**

15 U.S.C. § 78u-4(b)(1) ................................................................................................. 7

15 U.S.C. § 78u-4(b)(1)(2) ............................................................................................ 7

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................... 7

**Regulations**

17 C.F.R. § 240.13a-13(b) ........................................................................................... 11

17 CFR § 240.10b–5(b) .................................................................................................. 8

## PRELIMINARY STATEMENT[1]

Plaintiff's Amended Complaint ("AC") should be dismissed because it is premised on the untenable theory that a public company cannot make any positive statement about its current business or future prospects unless it simultaneously describes poor financial results from prior periods and immaterial details about its business dealings.  The federal securities laws do not sweep so broadly, and this Court should decline Plaintiff's invitation to create a new affirmative disclosure duty.

Canaan Inc. ("Canaan") manufactures and sells bitcoin mining machines, and, like so many businesses that struggled to navigate the COVID-19 pandemic, it experienced a downturn in 2020.  On November 30, 2020, Canaan issued a press release reporting its third-quarter financial results, disclosing that year-over-year revenues and sales had both declined substantially.  Ex. 1 at 1.[2]  Canaan's fourth-quarter 2020 financial results, reported on April 12, 2021, were also disappointing—an unsurprising result given the pandemic's well-documented disruptions and resulting global supply-chain issues.

In between those two reports on its *past* performance, Canaan had some good news to share about its *future* prospects.  On February 10, 2021, Canaan informed investors that it had received a large volume of prepaid purchase orders from a new client base that provided it with improved "revenue visibility" for 2021.  And on April 9, 2021, in the context of explaining why Canaan *anticipated* it would be able to meet existing orders, Canaan CEO Nangeng Zhang was quoted in *Decrypt*, an online cryptocurrency publication, as saying that Canaan aimed to "reduce supply-chain risks" by "collaborat[ing] and work[ing] with a number of leading chip

---

[1] Unless otherwise noted, internal citations and quotations are omitted, and emphases are added.

[2] Citations to "Ex. __" are to the exhibits to Daniel L. Cantor's Declaration in Support of Canaan's Request for Judicial Notice.

manufacturers." Canaan did not address its past performance in either of these statements, which focused on Canaan's performance moving forward—in 2021 and beyond.

Plaintiff now seeks to hold Canaan liable for conveying good news about its business, alleging that the positive updates and performance projections for *2021* somehow violated Section 10(b) because they omitted Canaan's disappointing *2020* financial results and other details from that past year, such as the existence of supply-chain disruptions and the price at which Canaan sold its mining machines. But the securities laws do not require companies to always temper good news with bad. Rather, to establish Section 10(b) liability, Plaintiff must either identify a statement that was actually false when made or show that Canaan omitted material facts that rendered an affirmative statement somehow false or misleading. Moreover, Plaintiff must establish that the false or misleading statements were made with scienter.

Here, Plaintiff does not even attempt to allege that November 30, 2020 press release, February 10, 2021 press release, or the April 9, 2021 media report contained any statement that was actually false when made. This is purely an omissions case. But Plaintiff fails to identify an actionable omission with respect to any of three challenged documents:

- *November 30, 2020 Press Release.* This press release was issued more than two months before the alleged class period began and, thus, cannot give rise to Plaintiff's claims. Regardless, Plaintiff's claim that Canaan had a duty to correct statements in the press release fails as a matter of law because that duty applies only to *false* statements, which Plaintiff does not and cannot identify. To the extent Plaintiff intended instead to assert a duty-to-update claim, it too would fail because that duty applies only to forward-looking statements that remain "alive" as current representations. None of the statements that Plaintiff points to in this press release were forward-looking.

- *February 10, 2021 Press Release.* Plaintiff's assertion that statements about Canaan's revenue visibility improvement, prepaid purchase orders, and their projected effect on Canaan's 2021 performance allegedly "concealed" Canaan's disappointing fourth-quarter 2020 performance ignores that, as a foreign private issuer, Canaan had no affirmative duty to disclose its financial results, which it subsequently did in any event. Thus, Plaintiff cannot state an omissions claim based on Canaan's fourth-quarter results unless it establishes a "close nexus" between that information and the press release's statements

2

about current orders and future performance, which it cannot.  Likewise deficient is Plaintiff's assertion that statements concerning prepaid purchase orders and revenue visibility were incomplete because they did not include pricing details for the prepaid purchase orders.  Section 10(b) does not require Canaan to disclose every last detail concerning every public statement it makes.

- *April 9, 2021* **Decrypt** *Article.*  Canaan cannot be held liable for statements made by third parties.  The *Decrypt* article was authored by an independent reporter with no alleged affiliation with Canaan.  Thus, her statements cannot create Section 10(b) liability for Canaan.  As for the one statement attributed to a Canaan official—Mr. Zhang's alleged comment that Canaan had taken steps to "reduce supply-chain risk"—it is not actionable because it was not alleged to be false and was entirely consistent with Canaan's subsequent disclosure that it had nonetheless experienced "supply chain disruptions" in the prior fiscal quarter.

Finally, even if Plaintiff could identify a false or misleading statement in one of those three documents—and it cannot—the AC's failure to plead scienter would still doom the AC. Plaintiff seeks to impute Mr. Zhang's and Canaan CFO Tong He's alleged scienter to Canaan. But courts routinely discredit efforts—like Plaintiff's here—to attribute a wrongful state of mind to company executives merely because of their executive positions.  The Second Circuit has also rejected the formulaic pleading technique that Plaintiff employs in the Complaint.  Plaintiff's conclusory allegations about the timing of the challenged statements and that statements were "knowingly false and misleading" fail to meet *Tellabs*'s exacting pleading standard.  And Plaintiff's baseless speculation about former Canaan CFO Quanfu Hong's resignation likewise fails to salvage his claim because nothing in the AC suggests that Mr. Hong's resignation was precipitated by wrongdoing.

Plaintiff's AC should be dismissed with prejudice.

## BACKGROUND

Canaan is a leader in supercomputing technology.  Ex. 2 ("Registration Statement") (cited as "Reg. Stmnt.") at 1.  Since its founding in 2013, Canaan has grown into one of the world's largest designers and manufacturers of bitcoin mining machines.  *Id.*  Although

3

incorporated in the Cayman Islands, Canaan conducts operations primarily in China, and its American Depository Share ("ADS") trades on the NASDAQ Global Market. AC ¶ 2. As Canaan warns investors, the price of its ADS tends to track bitcoin's price, which "has experienced significant fluctuations over its short existence and may continue to fluctuate significantly in the future." Reg. Stmnt. at 16.

On November 30, 2020, Canaan reported its financial results for the third quarter of 2020. AC ¶ 28. The numbers were disappointing: year-over-year net revenues and computing power sales were down by 75.7% and 20.7%, respectively. AC ¶ 28. In a press release, Canaan's Chief Financial Officer at the time, Quanfu Hong, also disclosed that "demand for mining machines in the market continued to rebound during the third quarter," and that Canaan had "received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020." AC ¶ 28. Canaan's ADS closed that day at $5, down from $5.75 the day before. Ex. 3 at 8.

On February 8, 2021—before Plaintiff's proposed class period began—Canaan's ADS price began to rise.[3] AC ¶ 33. On February 9, 2021, the ADS price increased to $7.75 from $7.06 the prior day. Ex. 3 at 7. That same day, Canaan announced Mr. Hong's resignation as CFO, noting he had left the company for "personal reasons." *See* AC ¶ 30.

On February 10, 2021, Canaan issued a press release titled "Canaan Announces Improved Revenue Visibility in 2021." AC ¶ 32. The press release disclosed that Canaan had received "purchase orders totaling more than 100,000 units of bitcoin mining machines from customers in North America." Ex. 4 at 1. It also stated that many of those "purchase orders were placed with

---

[3] The AC is not a typical securities class action complaint: Plaintiff alleges that Canaan's ADS price increased before, not after, the alleged February 10, 2021 misstatements and declined, not increased, the day of the alleged April 9, 2021 misstatements.

prepayment and will likely occupy the Company's current manufacturing capacity entirely for the full year of 2021 and beyond." *Id.* And it added that, because the purchase orders were "fully committed," Canaan would enjoy "a much higher degree of revenue visibility and more precise forecast." *Id.* CEO Zhang also stated that Canaan had "shifted [its] client base to mostly publicly traded companies and bitcoin-focused investment funds which tend to place sizable orders with longer-term commitment." *Id.* As a result, Canaan could "now forecast [its] revenue much more precisely," which "should help [the company] achieve profitable growth for the long run." *Id.* The ADS price rose again, closing at $8.27 that day. Ex. 3 at 7. Nothing in the February 10, 2021 press release addressed Canaan's 2020 financial results.

From February 10, 2021, until April 12, 2021, when Canaan reported its fourth-quarter 2020 earnings, the price of both its ADS and bitcoin rose substantially. For example, the ADS traded at a high of $36.40 on March 11, 2021, when bitcoin closed at $56,710.60. Ex. 3 at 6; Ex. 5, at 9. But for cryptocurrencies and stocks that generally track them, volatility comes with the territory. Thus, as bitcoin's price dropped to $52,428.50 by March 25, 2021, the ADS price plunged by more than half over the same period, down to $18.21. By April 9, 2021—the end of the class period—Canaan's ADS had recovered to $18.67, and was up 126% since February 10, 2021. Ex. 3 at 6. Bitcoin's price had increased 29.7% during that same time. Ex. 5 at 8.

On April 9, 2021, cryptocurrency news site *Decrypt* published an article written by Adriana Hamacher titled, "Canaan CEO Bullish on Bitcoin Mining Ahead of Earnings." AC ¶ 36. Hamacher had no affiliation with Canaan, and Plaintiff does not allege otherwise. In the article, Hamacher made a number of statements about Canaan that she did not attribute to anybody at the company, including that (i) Canaan would soon "disclose Q4 and full 2020 results, and the outlook is rosy," (ii) Canaan "will have no problem fulfilling its bulging order

5

book," and (iii) "the company had secured chips from a number of fabrication plants in advance of the worldwide shortage of processors." *Id.* ¶ 37.  Hamacher also quoted Mr. Zhang as allegedly saying, "Our approach is one of a multi-fab strategy, where we collaborate and work with a number of leading chip manufacturers to reduce supply-chain risks." *Id.*  That day, despite these positive comments, Canaan's ADS closed down 1.5% from the prior day.  Ex. 3 at 6.

On April 12, 2021, Canaan disclosed its fourth-quarter 2020 financial results.  AC ¶ 39. Given the continuing effects of the global pandemic, revenue and sales unsurprisingly declined for the second straight quarter.  Year-over-year net revenue and computing power sales were down 91.8% and 93.1%, respectively.  *Id.*  During an earnings call with investors and analysts, Mr. Zhang cited "supply chain disruptions" as one cause of the decline.  AC ¶¶ 5, 8, 38; Ex. 7 at 2.  Canaan also disclosed that many of its mining machines were sold as "futures contracts," meaning they were sold at fixed prices that were lower than the steadily increasing prices of machines that primarily rose with the anticipated value of bitcoin.  AC ¶ 40; Ex. 9 at 13.

On June 1, 2021, Canaan reported its first-quarter 2021 financial results, confirming its February 10, 2021 prediction that the company's strategies would "help . . . achieve profitable growth" moving forward.  Ex. 8; Ex. 4 at 1.  Canaan's computing power sales increased 122.2% year over year and 900% quarter over quarter.  Ex. 8 at 4.  And its net revenues jumped 489.8% year over year and 954.5% quarter over quarter.  *Id.*  The ADS price closed that day at $10.26, a one-day increase of more than 22%.  Ex. 3 at 5.

## LEGAL STANDARD

To state a Section 10(b) claim, Plaintiff must plead facts showing that Canaan "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the

purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

Under the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"), a Section 10(b) claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Federal Rule of Civil Procedure 9(b) imposes a similar requirement that securities-fraud plaintiffs "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); Fed. R. Civ. P. 9(b). Conclusory statements unsupported by specific facts are insufficient. *ATSI Commc'ns*, 493 F.3d at 99 ("[a]llegations that are conclusory or unsupported by factual assertions are insufficient" to state a claim); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (allegations "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely" may be disregarded on a motion to dismiss).

The PSLRA also requires that the complaint "state with particularity facts giving rise to a strong inference" of scienter for each defendant. 15 U.S.C. § 78u-4(b)(1)(2); *see also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (requiring particularized factual allegations showing that each defendant made materially false or misleading statements with scienter). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). "The court must take into account

7

plausible opposing inferences," and "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

## ARGUMENT

**I.    PLAINTIFF FAILS TO ALLEGE A MATERIALLY FALSE OR MISLEADING STATEMENT.**

Plaintiff cannot meet his burden to plead falsity.  To plead an actionable misleading statement or omission, Plaintiff must allege particularized facts showing that Canaan (i) made a material representation that was false when made or (ii) omitted material information it had a duty to disclose.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812–13 (2d Cir. 1996).  Federal securities laws "do not create an affirmative duty to disclose any and all material information."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Information need not be disclosed "simply because it may be relevant or of interest to a reasonable investor."  *Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) (quoting *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)).  Rather, disclosure is required only "when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'"  *Matrixx*, 563 U.S. at 44 (quoting 17 CFR § 240.10b–5(b)).

Here, Plaintiff does not identify any Canaan statement that he alleges was actually false.  Rather, he characterizes certain statements as misleading by imposing an imaginary requirement on Canaan that it offer details on past financial performance whenever it issues news or makes future predictions.  Because Section 10(b) demands no such thing, Plaintiff cannot identify any misleading statement or omission, much less allege particularized facts to satisfy the PSLRA's and Rule 9(b)'s stringent pleading standards.  Indeed, Plaintiff fails to demonstrate how anything

8

in the November 30, 2020 press release, February 10, 2021 press release, or the April 9, 2021 media report created an impression that differed from reality. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). The AC must therefore be dismissed in its entirety.

### A.     The November 30, 2020 press release was not issued within the class period and is not false or misleading in any event.

Plaintiff challenges Mr. Hong's statements in the November 30, 2020 press release disclosing that "demand for mining machines in the market continued to rebound during the third quarter," and that Canaan had "received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020." AC ¶ 28. As a threshold matter, Plaintiff cannot recover under Section 10(b) for statements in the November 30, 2020 press release because he admits they fall outside the class period. *Compare* AC ¶ 1, *with id.* ¶ 28. Case law is clear that a defendant can be liable only for statements made during the class period, and courts do not consider statements outside that period. *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (challenged statement made the day before the start of the class period not considered on appeal); *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at \*15 (S.D.N.Y. 2022) (the fact that the alleged misstatements were made before the class period was fatal to Section 10(b) claim).

In any event, Plaintiff does not, and cannot, allege the challenged statements were actually false when made or otherwise. Plaintiff cannot evade this pleading failure by alleging that the November 30, 2020 statements were misleading because they went "uncorrected," *see* AC ¶ 29, because, setting aside that they were at no point misleading, there is no duty to correct

9

statements that were true when made. *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d at

109 (rejecting duty to correct argument where statements were true when made). Thus, because

Plaintiff does not dispute the truth of the challenged November 30, 2020 statements, his duty-to-

correct theory fails as a matter of law. *Id.*

To the extent Plaintiff conflated a supposed duty to "correct" with the duty to update, the

latter theory would also fail. Courts have held that a duty to update may exist where a statement

becomes misleading because of a subsequent event. *Id.* at 110. But where, as here, a statement

is not forward-looking and does not contain some factual representation that remains "alive" in

the minds of investors as a continuing representation, no duty to update exists. *Id.* Canaan's

statement that "demand for mining machines in the market continued to rebound during the third

quarter" was not forward-looking; it was specific to business conditions during the quarter that

had just concluded. *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y

2011) (no duty to update results of a recent clinical trial because the statements were not

forward-looking and did not predict the overall safety profile of the drug). Likewise, Canaan's

statement about a "large number of pre-sale orders . . . scheduled for delivery starting in the

fourth quarter" was not forward-looking because it related to sales made either before or during

the then-current quarter. Moreover, Plaintiff's failure to allege that these statements were

actually false when made militates further against a duty to update. *See In re Int'l Bus. Machines

Corp. Sec. Litig.*, 163 F.3d at 110 (no duty to update where statements were true expressions of

the company's view when made).

### B.    Canaan's February 10, 2021 statements were not false or misleading.

Canaan's February 10, 2021 press release, which addressed the company's focus for that

year and into the future, does not contain a false or misleading statement, and Plaintiff does not

10

adequately allege otherwise.  Plaintiff does not dispute the truth of any February 10, 2021 statement.  For instance, the AC is devoid of allegations that revenue visibility did not improve in 2021, that Canaan did not receive a number of prepaid purchase orders from customers in North America, that the prepaid purchase orders would not occupy its manufacturing capacity for 2021 and beyond, that Canaan's client base did not shift in late 2020, or that the new client base does not tend to place large orders with longer-term commitment.

Unable to allege falsity, Plaintiff instead asserts an unsupported omission theory—that the challenged statements were misleading because statements about Canaan's revenue visibility improvement, prepaid purchase orders, and their projected effect on Canaan's 2021 performance allegedly "concealed" Canaan's poor fourth-quarter 2020 performance—which Canaan would soon disclose on April 12, 2021—"while promoting Canaan's expected future success."  AC ¶ 33.  But this theory fails because Plaintiff does not allege that Canaan had an affirmative duty to disclose its fourth-quarter 2020 performance with its February 10, 2021 press release.  Nor can he.  Indeed, as a foreign private issuer, Canaan is not required to make quarterly or annual reports at all.  17 C.F.R. § 240.13a-13(b).

Faced with this obstacle, Plaintiff manufactures an untenable theory that Canaan's positive statements about its projected 2021 performance somehow misled investors about its fourth-quarter 2020 financial results—a subject the February 10, 2021 press release did not even discuss.  AC ¶ 33.  To be actionable under Section 10(b), however, Plaintiff "must establish a sufficiently close nexus between the affirmative statement and the alleged omission," such that the alleged omission renders the affirmative statement false and misleading.  *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 2021 WL 4443562, at *9 (S.D.N.Y. Sept. 28, 2021) (positive statements about dividend increase and managing through "uncertainty while delivering superior

11

earnings and reliable dividends" not sufficiently related to omitted "deteriorated financial condition and missed rent payments" to render statements misleading).

Here, Plaintiff fails to allege a sufficiently close connection between the February 10, 2021 press release and Canaan's fourth-quarter 2020 financial results. *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020), is squarely on point. There, the plaintiff alleged that the fourth-quarter 2018 statements Ferroglobe made in about the positive impact the resolution of its International Trade Commission complaint would have on its future performance were misleading because they omitted the company's poor third-quarter 2018 performance. 2020 WL 6585715, at *8–9. The court rejected this argument, reasoning that since the statements "were expressly directed to the future," "no reasonable investor would conclude" that they "applied to the third quarter of 2018." *Id.* at *8. The court similarly rejected an argument that the company's "expressed 'expectation' that demand for aluminum would 'continue delivering steady growth for silicon metal'" misled investors about the company's third-quarter 2018 performance. *Id.* at *9. The court explained that the challenged statements were not misleading because they "forecasted global demand for silicon-based products into 2023" and thus involved a "separate issue"—future performance—from the company's past performance in the third quarter of 2018. *Id.* (concluding that "statements that . . . painted an optimistic view of future prospects . . . [were not] misleading" merely because the company had a down prior quarter).

Canaan's February 10, 2021 statements, like the alleged misrepresentations in *Ferroglobe*, were not about the company's performance in a recently concluded quarter. As in *Ferroglobe*, the challenged statements referred only to then-existing facts and projections about how those facts would affect Canaan's ***future*** performance. AC ¶ 32 (2021 revenue visibility

12

improvement "a result of attaining purchase orders totaling more than 100,000 units . . . placed with prepayment and *will* likely occupy the Company's current manufacturing capacity . . . for the *full year of 2021 and beyond*"); *id.* ("revenue visibility has improved substantially *in 2021*"); *id.* ("should help us achieve profitable growth *for the long run*").  And as in *Ferroglobe*, Canaan was not required to report financial results for an earlier period when the subject of its statements was wholly unrelated to that topic, because "no reasonable investor would conclude" that Canaan's statements projecting future performance applied to its fourth-quarter 2020 financial results.  *Ferroglobe*, 2020 WL 6585715, at *8–9; *see also Kleinman*, 706 F.3d at 154 (allegedly omitted facts insufficiently related to challenged press release to render it misleading).

Plaintiff's assertion that Canaan's February 10, 2021 statements were incomplete because they did not include specific pricing information for the disclosed presale orders, *see* AC ¶ 38, fails to state a claim because Section 10(b) does not contain a "freestanding completeness requirement." *Brody*, 280 F.3d at 1006.  Companies are not required to disclose every conceivable detail concerning their business because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Id.*  The only requirement is that statements made not be false or misleading. *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021) ("An omission is actionable under federal securities laws only when the Defendant is subject to a duty to disclose the omitted facts. . . . [C]orporations are not required to disclose a fact merely because a reasonable investor would very much like to know that fact.").  Here, Canaan need not have disclosed the pricing of its presale orders when it disclosed their existence because such details were not sufficiently related to the company's statements to render them misleading. *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 2021 WL 4443562, at *9. Canaan's statements about prepaid purchase orders were made

13

in the context of how they would provide enhanced "revenue visibility" in 2021; they were not about how presales would impact fourth-quarter 2020 results. AC ¶ 32 (prepaid purchase orders provide "improved" "revenue visibility . . . *in 2021*"). Accordingly, they were not sufficiently related to Canaan's fourth-quarter 2020 performance to have misled reasonable investors. *Ferroglobe*, 2020 WL 6585715, at *9 ("[S]tatements that . . . painted an optimistic view of future prospects based on market fundamentals do not become misleading merely because the Company was having a down quarter at the time the statements were made.").

Plaintiff's claim boils down to a baseless contention that Canaan could not make positive statements about its projected 2021 performance absent an early disclosure of its disappointing fourth-quarter 2020 results. "People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Crediting Plaintiff's theory would add draconian new requirements to Section 10(b), weaponizing it to preclude any generic positive corporate statements unless a company divulges all negative facts, despite the disconnect between the statement and alleged omissions. This Court should not endorse Plaintiff's radical expansion of the federal securities laws.

### C. The April 9, 2021 *Decrypt* article contained only a single challenged statement allegedly made by Canaan, and it was not false or misleading.

Plaintiff's attempt to establish falsity based on an April 9, 2021 article in a cryptocurrency publication underscores the futility of his Section 10(b) claim for multiple reasons.

*First*, Canaan cannot be held liable for statements it did not make. The *Decrypt* article was written by an independent reporter, who Plaintiff does not allege has any affiliation with

14

Canaan.  AC ¶ 36.  Courts routinely reject attempts, like Plaintiff's here, to premise Section

10(b) claims on statements made by independent authors in articles written about the defendant

because the statements cannot reasonably be inferred to have originated with the defendant.  *See*

*e.g.*, *Hershfang v. Citicorp*, 767 F. Supp 1251, 1255 (S.D.N.Y. 1991) (press articles and analyst

reports that expressed the views of the authors and not the company not actionable).

Frank H. Cobb, Inc. v. Cooper Cos., 1992 WL 77600 (S.D.N.Y. Mar. 23, 1992), is

instructive.  There, the plaintiff claimed that statements by an unaffiliated author in a

*BusinessWeek* article asserting that defendants believed their investment would "bring in well

over $1 billion" were misleading and violated Section 10(b).  *Id.* at *4.  The court rejected this

allegation, reasoning that since it was "not clear whether the representation [was] actually

attributable to the [defendants] rather than the . . . reporter," the statements were "obviously

unreliable" and nonactionable.  *Id.*  Likewise here, the *Decrypt* article that contained statements

that purportedly violated Section 10(b) was written by an author independent of Canaan.  AC ¶

36 ("[Canaan] will disclose Q4 and full 2020 results, and the outlook is rosy."); *id.* ¶ 37

("Canaan anticipates it will have no problem fulfilling its bulging order book."); *id.* ("Zhang said

that the company had secured chips from a number of fabrication plants in advance of the

worldwide shortage of processors . . ."); *id.* ("This has allowed Canaan to continue to produce its

popular Avalon miners on a scale to meet market demand.").  But as in *Frank H. Cobb, Inc.*,

none of these statements is actionable because Plaintiff cannot distinguish the author's words

from those that can be attributed to Canaan.  This result makes sense.  Corporations should not

be required to "read every article written about them," nor can they be held "liable . . . for any

inaccuracies therein."  *Milberg v. Western Pac. R. Co.*, 51 F.R.D. 280, 282 (S.D.N.Y. 1970)

15

(denying class certification where plaintiff premised Section 10(b) claim on statements in article about defendant).

*Second*, Mr. Zhang's alleged quote in the article was not false or misleading.  Plaintiff does not allege that Canaan did not, in fact, "work with a number of leading chip manufacturers to reduce supply-chain risks."  AC ¶ 37.  Rather, he alleges that the statement was misleading because Canaan would later disclose, on April 12, 2021, that it experienced "supply chain disruptions" in the fourth quarter of 2020.  AC ¶ 38.  To be misleading, an omitted fact must be "necessarily inconsistent" with the actual statements made.  *See Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *16 n.16 (S.D.N.Y. Sept. 30, 2008); *accord Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015) (omitted facts must "conflict with what a reasonable investor would take from the statement); *Kleinman*, 706 F.3d at 155 (omitted information must be "at odds with [the] statement[s]").  Here, the challenged statement and alleged omission are entirely consistent.  Had Mr. Zhang stated that Canaan had successfully **_eliminated_** supply-chain risk, then the subsequent disclosure of "supply chain disruptions" might have been inconsistent with the challenged statement.  But that is not what Plaintiff alleges.  Instead, Mr. Zhang is alleged to have stated only that Canaan's strategy was intended to "**_reduce_**" supply-chain risk, not eliminate it altogether.  Thus, the subsequent disclosure of "supply chain disruptions" did not conflict with Mr. Zhang's statement that Canaan took steps to reduce the risk of those disruptions.  AC ¶ 37.  The purported quote in *Decrypt* is therefore not actionable.  *Ladmen Partners, Inc.*, 2008 WL 4449280, at *16 n.16; *see also In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 371–72 (S.D.N.Y. 2018) (finding company's statement that it "completed a series of remedial works to prevent [cyanide spills]

16

from occurring again" was not false or misleading even though cyanide spill subsequently occurred because the statement did not guarantee there would be no other spill).[4]

## II.   PLAINTIFF FAILS TO PLEAD ANY INFERENCE OF SCIENTER.

Although Plaintiff's failure to plead falsity dooms his Section 10(b) claim, the Court can also dismiss the AC based on his failure to allege facts creating a "strong inference" of scienter. *Tellabs*, 551 U.S. at 321–22.  To qualify as "strong," an inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.  Here, Plaintiff seeks to impute Mr. Zhang's and Mr. He's alleged scienter to Canaan.  AC ¶ 51.  But Plaintiff's theory of fraudulent intent fails to meet *Tellabs*'s exacting pleading standard and is not supported by particularized factual allegations.

Plaintiff alleges various facts that he baselessly claims support an inference of scienter. AC ¶¶ 42–51.  For instance, Plaintiff seeks to attribute a wrongful state of mind to Mr. Zhang and Mr. He merely because of their executive positions.  But this runs afoul of the PSLRA, which requires a plaintiff to plead specific facts; "accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010).  Plaintiff alleges nothing else here aside from conclusory allegations seeking to manufacture scienter where none exists. *E.g.*, AC ¶ 21 ("Because of their positions with the Company, and their access to material information available to them but not to the public, the

---

[4] Moreover, supply-chain disruptions negatively impacting Canaan's fourth-quarter 2020 performance should have come as no surprise to a reasonable investor given that such disruptions were being experienced globally.  Thus, the statement that Canaan "reduce[d] supply chain risks," AC ¶ 37, did not mislead investors by "affirmatively creat[ing] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]," *Brody*, 280 F.3d at 1006, because a reasonable investor would have known that the "reduced . . . risk" did not fully insulate Canaan from the ubiquitous supply-chain shortages experienced worldwide.

Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public"); *id.* ¶ 43 ("In their respective roles as senior officers of Canaan, the Individual Defendants were able to, and did, control the information disseminated to the investing public . . .").  Plaintiff also does not allege that Mr. Zhang or Mr. He sold any shares during the class period.  As the Second Circuit has made clear, a lack of insider stock sales cuts against finding scienter at the motion to dismiss stage.  *San Leandro*, 75 F.3d at 814 ("[T]he fact that other defendants did not sell their shares during the relevant class period sufficiently undermines . . . motive.").

Further, Plaintiff's reliance on a formulaic pleading technique for scienter requires dismissal.  For example, Plaintiff alleges that "Defendants knew that the positive statements regarding increases in the size and quality of orders were false and misleading . . . ." AC ¶ 5, and that the challenged "statements were knowingly false and misleading," *id.* ¶ 8.  Conclusory pleading tactics like Plaintiff's have "been regularly rejected by the Second Circuit" and should likewise be rejected here.  *Leventhal v. Tow*, 48 F. Supp. 2d 104, 113 (D. Conn. 1999); *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (rejecting allegations that defendants "knew but concealed" and "knew or were reckless in not knowing" because they were "so broad and conclusory as to be meaningless").

Plaintiff also claims that the timing of the challenged statements suggests an intent to deceive because they were made after the fourth quarter ended.  AC ¶ 46.  But the AC contains no allegation that Canaan actually knew its financial results by February 10, 2021, aside from bald allegations that, for example, Mr. Zhang and Mr. He "knowingly or recklessly disregarded" certain information.  AC ¶ 42; *id.* ¶ 47 (conclusorily alleging that the degree of revenue decline "makes it simply implausible" that Mr. Zhang and Mr. He did not know of the negative financial

18

results).[5]  These are precisely the types of conclusory allegations that fail under *Twombly/Iqbal*, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and that stand no chance of satisfying Rule 9(b)'s and the PSLRA's stringent pleading standards.  *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *10 (S.D.N.Y. Nov. 25, 2003) (argument that a company's final second-quarter results must have been apparent throughout the quarter because of decreased sales in the prior quarter and management's access to interim sales data was insufficient to support allegations of scienter).

As in any other scienter analysis, courts also "must take into account plausible opposing inferences" from the allegations.  *Tellabs*, 551 U.S. at 323.  A plaintiff's scienter allegations are adequate only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.  Here, the more plausible explanation for the alleged omissions is that Canaan did not disclose them because the prior-quarter market conditions and results were wholly unrelated to the news that Canaan was conveying to investors—that recent developments might positively affect the company's performance in 2021 and beyond.  *See* AC ¶ 32.  Thus, in addition to barring the falsity element of Plaintiff's Section 10(b) claim, the disconnect between the challenged statements and alleged omissions also militates against a finding of scienter.  Moreover, as discussed, Plaintiff does not allege that the challenged statements were false, and Canaan's first-quarter 2021 results confirmed the truth of its positive 2021 outlook, Ex. 8 at 4, further belying Plaintiff's claim that the positive statements were made with scienter.

---

[5] Even if adequately alleged, Plaintiff's allegation that Mr. Zhang and Mr. He must have known about the fourth-quarter 2020 revenue decline because of its magnitude is a non-starter.  AC ¶ 47; *cf. In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021) ("[T]he magnitude (or duration) of an adverse result does not provide an independent basis for scienter.") (internal quotations omitted).

Plaintiff's baseless speculation about Mr. Hong's departure does nothing to salvage his claim. AC ¶ 48. An executive's resignation cannot be used to establish scienter unless there are facts showing a link between the resignation and the alleged fraud. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) (resignations must be "uncharacteristic when compared to the defendant's typical . . . termination patterns or [] accompanied by suspicious circumstances" to support a strong inference of scienter). No such facts have been pleaded here in any meaningful way. And as Plaintiff himself alleges, Mr. Hong resigned for personal reasons. *Id.* ¶ 3. Because nothing in the AC suggests that Mr. Hong's resignation was precipitated by wrongdoing, it is insufficient to support a finding of scienter. *See Zucco*, 552 F.3d at 1002 (no strong inference of scienter based on multiple employee resignations).

## CONCLUSION

Plaintiff's entire case is premised on a radical expansion of the federal securities laws. To make out a claim, he proposes that no public company can speak about its present status or future outlook without also excavating details of its financial past—that every going-forward statement must include a look in the rearview mirror. Such a rule would invite chaos, subjecting countless corporate utterances to a completeness requirement that no branch of government has ever endorsed, and Plaintiff offers no support for one. For all the foregoing reasons, the Court should grant Canaan's Motion and dismiss Plaintiff's AC in its entirety with prejudice.

///

///

///

///

///

20

Dated:  April 8, 2022

Respectfully submitted,

*/s/ Daniel L. Cantor*

Daniel L. Cantor
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 326-2000
Email: dcantor@omm.com

William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone: (213) 430-6000
Email: wpao@omm.com

*Attorneys for Defendant Canaan Inc.*