**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON DENNY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CANAAN INC., NANGENG ZHANG and TONG HE,<br><br>Defendants. | Case No.: 1:21-cv-03299-JPC-SDA<br><br>**CLASS ACTION**<br><br>JURY TRIAL DEMENDED |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT CANAAN INC.'S**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated:  June 7, 2022

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email:  eagel@bespc.com
       fortunato@bespc.com
       passmore@bespc.com

*Lead Counsel for Lead Plaintiffs*
*and the Proposed Class*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................................... 3

      A.    Canaan's Main Source of Income Comes From Bitcoin Machine Sales................ 3

      B.    Defendants Create a Misleading Impression of a Positive
            Fourth Quarter 2020 After Disappointing Third Quarter Results
            and the Resignation of Canaan's CFO........................................................ 3

      C.    Defendants are Forced to Reveal their Material Omissions ................................. 5

III.  ARGUMENT ...................................................................................................... 6

      A.    Applicable Legal Standards ..................................................................... 6

      B.    The Complaint Adequately Alleges Materially False and Misleading
            Statements and Omissions ...................................................................... 7

            1.    Material Misstatements and Omissions
                  Concerning Canaan's Supply Chain ............................................. 9

            2.    Material Misstatements and Omissions
                  Concerning Canaan's Pre-Orders ............................................. 14

      C.    The Complaint Adequately Alleges a Strong Inference Scienter ....................... 17

            1.    Defendants Knew or Recklessly Disregarded
                  Critical Facts Undermining their Public Statements.............................. 18

            2.    A Strong Inference of Corporate Scienter is Alleged .............................. 24

IV.   CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)............................................................................................. 10

*Akerman v. Arotech Corp.*,
608 F. Supp. 2d 372 (E.D.N.Y. 2009)............................................................................... 18

*In re Allergan PLS Sec. Litig.*,
No. 18 Civ. 12089, 2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019) ................................... 9

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................................................... 15

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
19 F.4th 145 (2d Cir. 2021) ............................................................................................... 7

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)............................................................................... 22

*In re Avon Sec. Litig.*,
No. 19 Civ. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)............................ 22

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)............................................................................... 13

*Caiola v. Citibank, N.A.*,
295 F.3d 312 (2d Cir. 2002)......................................................................................... 8, 11

*Christine Asia Co. Ltd. v. Ma*,
718 F. App'x 20 (2d Cir. 2017).................................................................................... 11, 17

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)............................................................................... 21

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM) (THK), 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013)...................... 8

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020)........................................................................... 12, 21

*Cohen v. Kitov Pharm. Holdings, Ltd.*,
No. 17 Civ. 0917 (LGS), 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018)............................. 17

*In re Columbia Sec. Litig.*,
747 F. Supp. 237 (S.D.N.Y. 1990)........................................................................... 2, 12, 13

*Crowell v. Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) ...................................................................................... 24

*In re Complete Mgmt. Inc. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001).................................................................................. 23

*In re Daou Sys., Inc., Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005)............................................................................................... 9

*In re DDi Corp. Corp. Sec. Litig.*,
   Master File No. CV 03-7063 NM (SJHx), 2005 WL 3090882 (C.D. Cal. July 20, 2005) ....... 12

*In re Duane Reade Inc. Sec. Litig.*,
   No. 02 Civ. 6478 (NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003).............................. 21

*In re Electrobras Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017)............................................................................. 23, 25

*Emps' Ret. Sys. of Gov't of the V.I. v. Blanford*,
   794 F.3d 297 (2d Cir. 2015)..................................................................................... 17, 18, 24

*EP Medsystems, Inc. v. Echocath, Inc.*,
   235 F.3d 865 (3d Cir. 2000)................................................................................................. 24

*In re Ferroglobe PLC Sec. Litig.*,
   Master File No. 1:19-cv-00629 (RA), 2020 WL 658715 (S.D.N.Y. Nov. 10, 2020) ............... 16

*Frank H. Cobb, Inc. v. Cooper Cos.*,
   No. 89 Civ. 5323 (MGC), 1992 WL 77600 (S.D.N.Y. Mar. 20, 1992) .................................. 13

*Fresno Cty. Emps. Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)............................................................................... 9, 22

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010).............................................................................. 15, 19

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000).............................................................................................. 11, 17

*Gauquie v. Albany Molecular Research, Inc.*,
   No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016).......................... 21

*Hershfang v. Citicorp*,
   767 F. Supp. 1251 (S.D.N.Y. 1991)..................................................................................... 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12 Civ. 8557 (CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ................................... 18

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998)........................................................................................ 14

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    251 F. Supp. 3d 596 (S.D.N.Y. 2017)........................................................................ 8, 12

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)........................................................................................ 21

*Iwa Forest Indus. Pension Plan v. Textron Inc.*,
    14 F.4th 141 (2d Cir. 2021)........................................................................................ 12

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)...................................................................................... 10

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008))................................. 11

*Lapin v. Goldman Sachs Grp., Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006)......................................................................... 11

*Lea v. TAL Educ. Grp.*,
    837 Fed. App'x 20 (2d Cir. 2020).............................................................................. 23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)......................................................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) .......................................................................................................... 8

*In re MCI Worldcom Sec. Litig.*,
    93 F. Supp. 2d 276 (E.D.N.Y. 2000)........................................................................... 13

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)...................................................................................... 6, 9

*Micholle v. Ophthotech Corp.*,
    No. 17-cv-210 (VSB), 2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019) ................................. 24

*Milberg v. W. Pac. R.R. Co.*,
    51 F.R.D. 280 (S.D.N.Y. 1970)................................................................................... 13

*In re Morgan Stanley Info Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)................................................................................... 12, 17

*New Orleans Emp's. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011)................................................................................. 7, 22

iv

*In re NIO Sec. Litig.*,
  No. 19-CV-1424 (NGG) (JRC), 2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021) ...................... 20

*No. 84 Emp'r Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) .................................................................................................. 24

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ............................................................................................. *passim*

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) .................................................................................. 22, 23

*In re Omega Healthcare Inv'rs., Inc. Sec. Litig.*,
  No. 17 Civ. 8983 (NRB), 2021 WL 4443562 (S.D.N.Y. Sept. 28, 2021) ............................... 16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................................... 10

*In re Pareteum Sec. Litig.*,
  No. 19 Civ. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) .......................... 21, 23

*Plumbers & Pipefitters Nat'l. Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015) ....................................................................................... 23

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................................. 18, 19

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ..................................................................................................... 22

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...................................................................................... 10

*Setzer v. Omega Healthcare Inv'rs, Inc.*,
  968 F.3d 204 (2d Cir. 2020) .............................................................................................. 10, 16

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) .................................................................................................... 21

*Simon v. Am. Power Conversation Corp.*,
  945 F. Supp. 416 (D.R.I. 1996) ........................................................................................... 2, 13

*Sloman v. Pressteck, Inc.*,
  2007 WL 24740047 (D.N.H. Sept. 18, 2007) .......................................................................... 10

*Spitzberg v. Houston Am. Energy Corp.*,
  758 F.3d 676 (5th Cir. 2014) ................................................................................................... 12

*Steginsky v. Xcelera Inc.*,
741 F.3d 365 (2d Cir. 2014).............................................................................................. 6

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021).............................................................................................. 7

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008)............................................................................................ 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................... 17, 24

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993).......................................................................................... 8, 11, 15

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ..................................................................................................... 8, 17

*Tyman v. Pfizer, Inc.*,
No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) .................... 25

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)............................................................................................. 8

**Statutes**

17 C.F.R. § 240.13a-13(b) ............................................................................................... 16

17 C.F.R. § 240.3a12-3 .................................................................................................... 24

17 C.F.R. § 249.220f......................................................................................................... 16

Lead Plaintiffs Bill Lu ("Lu") and Liying Huang ("Huang," and together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Canaan Inc.'s ("Canaan," the "Company," or "Defendant") Motion to Dismiss the Amended Class Action Complaint ("Motion" or "Mot.") (ECF No. 69) and supporting memorandum ("DB") (ECF No. 70).[1]

## I.     **PRELIMINARY STATEMENT**

To offset the negative news of revenue declines of 75.7% year-over-year during the third quarter of 2020, in November 2020, Canaan touted demand rebound and a large number of pre-sale orders with delivery beginning in the fourth quarter of 2020.  On February 9, 2021, the day before the beginning of the Class Period, the Company revealed additional stock depressing news, its Chief Financial Officer ("CFO") was resigning.

On the first day of the Class Period, February 10, 2021, Defendants issued an unusually timed press release once again emphasizing the Company's large prepayment orders.  Canaan's share price soared on this news, increasing nearly 90% from February 8, 2021 to February 12, 2021.  Defendants knew that the announcement of large prepayment orders was not the whole truth, because Defendants knew, but did not disclose, that Canaan's "prepayment" orders would hurt the Company's profitability because they locked the Company into sales prices that were far lower than the Company's new generations of mining machines and the re-bounding bitcoin market prices demanded.

---

[1] In addition to Canaan, the Amended Class Action Complaint (the Complaint") (ECF No. 65) names as defendants Nangeng Zhang ("Zhang") and Tong He ("He") (together, the "Individual Defendants," and with Canaan, the "Defendants") who have yet to appear in this action.  It is believed Zhang and He are residents of Peoples Republic of China ("PRC") which requires investigation into residential address, translation of documents, and a lengthy service process pursuant the Hague Convention which is not yet completed.

On April 9, 2021, defendant Zhang falsely stated in an interview that Canaan had secured chips for its mining machines in advance of the worldwide shortage, and that the Company's strategy of collaborating with manufacturers reduced its supply-chain risk. As revealed by Defendants only days after the interview, Canaan had in fact ***not*** been able to reduce supply-chain risks or avoid the effects of the chip shortage.

Investors learned the truth a few days later when, on April 12, 2021, Canaan reported its abysmal fourth quarter and full-year 2020 financial results with total net revenues declining by 77% quarter-over-quarter and 92% year-over-year for the fourth quarter 2020. The material revenue decline was caused by "supply chain disruptions" and the fact that "since the second half of [2020] and first half of [2021], most of the mining machines were sold as futures contracts, which had a fixed price [and which] were actually lower than [the Company's] existing machines" which could bring in higher prices with the increasing bitcoin prices if not sold as futures contracts. On this news, Canaan's share price plummeted nearly 30%.

Defendant cannot argue that the true state of affairs was not material or known to Defendants. Thus, Canaan resorts to a scattershot effort in challenging the well-pled falsity and scienter Complaint allegations. For example, Defendant argues that Zhang's statements made in an interview with *Decrypt* magazine cannot be actionable because the article was written by an independent reporter. This argument ignores that Zhang is directly quoted, the article includes language such as "Zhang said" and includes a plethora of Company-specific information permitting an inference that the writer received the information from Zhang. *See Simon v. Am. Power Conversation Corp.*, 945 F. Supp. 416, 433 (D.R.I. 1996); *In re Columbia Sec. Litig.*, 747 F. Supp. 237, 245 (S.D.N.Y. 1990) (statements made to reporter actionable).

As detailed below, Defendant's Motion should be denied in its entirety.

2

II.     **STATEMENT OF FACTS**

A.      **Canaan's Main Source of Income Comes From Bitcoin Machine Sales**

Canaan is a Cayman Islands holding company operating through a series of subsidiaries in Hong Kong and the PRC.  ¶¶ 2, 16-17.[2]  The Company's ADSs began trading on the NASDAQ in November 2019.  *Id.*  Canaan is controlled by defendant Zhang who is the Company's founder and has served as Chairman of the Board and as Chief Executive Officer ("CEO") since inception. ¶ 18.  More specifically, as of December 31, 2020, Zhang controlled 69.4% of the voting power, owning all of the Company's Class B ordinary shares.  ¶ 50.

Canaan's main line of business is manufacturing and selling cryptocurrency mining equipment under the AvalonMiner brand.  ¶¶ 23, 26.  Canaan proclaims to manufacture mining machines with stronger computing power than certain other types of machines due to its proprietary application specific integrated circuit chips.  ¶ 26.  Power is of the utmost necessity to bitcoin miners to solve the puzzles in the blockchain networks and reap additional cryptocurrency for their work.  ¶¶ 23-25.  Sales of the Company's mining machines and related parts comprised 99.7%, 97.7%, and 94.4% of Canaan's total revenue for 2018, 2019, and 2020, respectively.  ¶ 27. Canaan's customers are primarily located in the PRC with revenue from customers in the PRC accounting for 76.1%, 74.8%, and 84.8% of total revenue for 2018, 2019, and 2020, respectively. *Id.*

B.      **Defendants Create a Misleading Impression of
        a Positive Fourth Quarter 2020 After Disappointing
        Third Quarter Results and the Resignation of Canaan's CFO**

On November 30, 2020, Canaan announced disappointing third quarter 2020 results with total net revenues decreasing 75.7% year-over-year and 8.5% quarter-over-quarter.  ¶ 28.

---

[2]  All references to "¶__" are to the Complaint.  Unless otherwise noted, capitalized terms shall have the same meanings as ascribed to them in the Complaint, emphasis is added, and internal quotations and citations are omitted.

Defendants attempted to allay the concerning results, stating in the financial results press release that while "pandemic and resulting macroeconomic uncertainties continued to impact the production capacity . . . in the third quarter of 2020" "demand . . . continued to rebound" and the Company had "received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020." *Id.* Then, the day before the beginning of the Class Period, on February 9, 2021, the Company announced that its CFO Quanfu Hong ("Hong") had suddenly resigned effective immediately with no explanation other than due to "personal reasons." ¶¶ 3, 30.

With the poor third quarter 2020 financial results, and even worse fourth quarter 2020 results already known to Defendants but not investors, Defendants actively mislead the market from February 10, 2021 to April 9, 2021. *E.g.*, ¶¶ 1, 5, 8, 38, 40. On February 10, 2021, six weeks after the end of the fourth quarter 2020 and the day after the CFO resignation, the Company issued a press release titled "Canaan Announces Improved Revenue Visibility in 2021". ¶¶ 6, 32. The press release claimed that revenue visibility had improved substantially due to purchase orders of which many were "prepayment and will likely occupy the Company's current manufacturing capacity entirely for the full year of 2021 and beyond." ¶¶ 4, 32. The press release added that the increased revenue visibility was also due to the fact that the Company's client base had shifted in late 2020 and that Canaan was now focusing on "mostly publicly traded companies and bitcoin-focused investment funds." ¶ 32

The market's reaction was positive and Canaan's ADS price increased from an open of $6.91 per share on Monday, February 8, 2021, to close at $13.04 per share on Friday, February 12, 2021, an increase of nearly 90%. ¶¶ 6, 33. *The Motley Fool* reported on the positive news, noting that Canaan's "stock was up 13%, even though Bitcoin and other Bitcoin stocks were down sharply." ¶ 34. The timing of the news was odd, even to *The Motley Fool* who noted that "this

4

financial update is oddly timed.  . . .  You wouldn't expect such an important financial announcement just one day after a CFO's departure.  *Id.*

Almost two months later, on Friday, April 9, 2021, defendant Zhang was interviewed by *Decrypt* magazine and quoted in an article titled "Canaan CEO Is Bullish on Bitcoin Mining Ahead of Earnings – The Nasdaq-listed manufacturer of crypt mining hardware has seen its stock jump almost 1000% in six months."  ¶ 36.  Zhang was quoted in the article, emphasizing that the global shortage of chips had not negatively impacted Canaan.  ¶¶ 7, 37.

In truth, Canaan had been experiencing supply chain disruptions and the Company's fourth quarter 2020 earnings were shockingly negative.  Each of Defendants' statements during the Class Period concealed from investors that:  (a) Canaan had experienced significant ongoing supply chain disruptions during the fourth quarter 2020; (b) the Company's touted pre-sale orders were locked in at lower prices than the re-bounding bitcoin market prices during the third and fourth quarters 2020, reducing the Company's ability to earn revenue from the increasing market prices; (c) as a result of the foregoing, Canaan's fourth quarter 2020 sales and sales revenue had declined dramatically; and (d) as a result of the foregoing, Canaan was not on track to achieve the strong financial prospects it had led the market to believe.  ¶¶ 5, 8, 38, 40.

### C.    Defendants are Forced to Reveal their Material Omissions

On Monday, April 12, 2021, before the opening of trading, Defendants issued a press release announcing the Company's financial results for the fourth quarter and full-year ending December 31, 2020.  ¶ 39.  The press release revealed the true substandard state of affairs at Canaan.  *Id.*  Fourth quarter 2020 total net revenue had decreased from RMB463.2[3] million to RMB38.2 million year-over-year and from RMB163.0 the previous quarter.  *Id.*  Total net revenues

---

[3]  "RMB" or "Renminbi" are the legal currency of China.

for the full year had decreased to RMB447.7 million from RMB516.0 million in 2019.  *Id.*  Total computing power sold declined 93% both year-over-year and quarter-over-quarter.  ¶¶ 8, 39. Shockingly, after just three days prior claiming to have avoided supply chain issues, Zhang admitted that "supply chain disruptions . . . negatively impacted our revenues in the fourth quarter of 2020 . . . ."  ¶ 39.  Zhang reiterated that Canaan experienced "a severe supply shortage" of mining machine chips on an earnings conference call later that morning.  ¶ 40.

Furthermore, although touting Canaan's new business model and pre-sale orders since November 30, 2020, Zhang admitted on the same call that those orders had actually harmed the Company's prospects, stating that "since the second half of last year and the first half of this year, most of the mining machines were sold as futures contracts, which had a fixed price.  And the prices were actually lower than our existing machines."  *Id.*  Defendants had previously stated to investors that the price of bitcoin mining machines typically increased with the price of bitcoin, which had risen dramatically in the fourth quarter 2020.  *Id.*

On this news, the market price of Canaan's ADSs collapsed from a close of $18.67 per share on April 9, 2021, to close of $13.14 per share on April 12, 2021, a decline of nearly 30%, on unusually high volume of approximately 60 million ADS trading, or more than three times the average daily volume over the preceding ten days.  ¶¶ 10, 41.

## III.    ARGUMENT

### A.    Applicable Legal Standards

On a Rule 12(b)(6) motion, courts must accept all factual allegations in the complaint as true and "draw[] all reasonable inferences in the plaintiff's favor."  *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014).  "[D]ismissal is appropriate only where [plaintiffs] can prove no set of facts consistent with the complaint that would entitle them to relief."  *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014).  Moreover, an "alleged fraud need only be

*plausible* based on the complaint; it need not be more likely than other possibilities." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015) (emphasis in original). "Although pleading standards are heightened for securities fraud claims, '[courts] must be careful not to mistake heightened pleading standards for impossible ones.'" *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021) (quoting *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021)).

Under Section 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Synchrony*, 988 F.3d at 167. Defendant only challenges falsity and scienter.

Section 10(b) claims must also satisfy Rule 9(b) and the particularity requirements of the PSLRA. *Altimeo*, 19 F.4th at 150. However, the PSLRA "does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based." *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000). Likewise, Rule 9(b) does "not require the pleading of detailed evidentiary matter in securities litigation." *New Orleans Emp's. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 15 (2d Cir. 2011). As detailed herein, the Complaint satisfies all requisite standards, and the Motion should be denied in its entirety.

B.   **The Complaint Adequately Alleges Materially
     <u>False and Misleading Statements and Omissions</u>**

Under Rule 9(b) and the PSLRA, falsity is adequately pled by "specify[ing] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b). A complaint need only allege facts "<u>sufficient</u>" to "support a reasonable belief as to the misleading nature of the statement or omission." *Novak*, 216 F.3d at 313-14, n.1

7

(emphasis in original). "[U]nless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that reasonable minds could not differ on the question of whether the statements . . . were misleading in light of the circumstances in which they were made", a motion to dismiss based on falsity should be denied. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 609 (S.D.N.Y. 2017).

Securities laws impose a duty "to be both accurate and complete" when speaking on an issue. *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002). Statements can be outright untruths or "misleading" by omission. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239-40 (2d Cir. 2016) ("half-truths", those that create a materially misleading impression, are actionable). Omissions can be actionable when a defendant has a duty to disclose the omitted facts. *Id*. at 239. Disclosure is also required "when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). When such disclosure is required, a plaintiff "need only demonstrate the materiality of the omitted facts and need not separately address the misleading nature of the statements that were actually made." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (THK), 2013 WL 1197755, at *10 (S.D.N.Y. Mar. 25, 2013) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267-68 (2d Cir. 1993)). Undisclosed information "is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available.'" *Time Warner*, 9 F.3d at 267-68 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

8

### 1.    Material Misstatements and Omissions
### Concerning Canaan's Supply Chain

Defendants' false statements and material omissions regarding Canaan's supply chain issues are actionable.  On April 9, 2021, defendant Zhang stated that Canaan had "secured chips from a number of fabrication plants in advance of the worldwide shortage of processors" and that the Company's "collborat[ive]" approach with "leading chip manufacturers . . . reduce[d] [Canaan's] supply chain risks[.]"  ¶ 37.

The first statement regarding securing chips was an outright falsehood as Defendants' own admissions, just three days later, prove.  On April 12, 2021, Defendants reported the exact opposite, that Canaan had experienced "a severe supply shortage" of "mining machine" chips during the fourth quarter of 2020.  ¶ 40.  In short, Defendants admitted that they had experienced a supply shortage so any statement negating such is necessarily false and misleading.  *See, e.g.*, *Fresno Cty. Emps. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("In light of comScore's admission that it must restate its financial statements, there can be no dispute that the SAC pleads numerous false and misleading misstatements with respect to revenue, revenue related metrics, and comScore's compliance with GAAP.").  Even if Canaan had secured chips prior to the shortage, the statement gives the false impression that the Company was not affected by the shortage.  *In re Allergan PLS Sec. Litig.*, No. 18 Civ. 12089, 2019 WL 4686445, at *23 (S.D.N.Y. Sept. 20, 2019) ("Even a statement that is literally true when viewed in isolation can be misleading in context if it leaves investors with a false impression.").  Furthermore, once Zhang chose to discuss the Company's chip supply during the worldwide shortage, he was required to tell the whole truth, which by Defendants' own admissions, he did not.  *Meyer*, 761 F.3d at 250 ("Even when there is no existing independent duty to disclosure information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."); *see also In re Daou Sys., Inc.*,

*Sec. Litig.*, 411 F.3d 1006, 1020 (9th Cir. 2005) (falsity pled where alleges discrepancy between positive statements and internal truth).

Additionally, the timing between Zhang's misstatements and the corrective disclosures supports falsity. *Sloman v. Pressteck, Inc.*, 2007 WL 24740047, at \*9 (D.N.H. Sept. 18, 2007) (temporal proximity between the false and misleading statements and the partial corrective risk disclosure supports falsity); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 392 (S.D.N.Y. 2007) (same). Here, Zhang's statement was issued on Friday, April 9, 2021, and the revelation of "a severe supply shortage" issued on Monday, April 12, 2021. ¶¶ 36-37, 39-40.

Likewise, Zhang's second April 9, 2021 statement regarding the Company's supply chain risk was materially false and actionable because it "omit[ted] material facts about the issuer's inquiry into or knowledge concerning [the] statement," and the omitted facts "conflict with what a reasonable investor would take from the statement." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015); *see also Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 177 (2d Cir. 2020) (statement misleading where investors "would have credited [it] as researched and intentional, part of a well-prepared professional presentation"). Once Zhang chose to tout the positive information regarding the Company's supply chain risks, he was duty-bound to also disclose "adverse information that cuts against the positive information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018); *see also Setzer v. Omega Healthcare Inv'rs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) ("by putting [customer's] rental payments 'in play,' Defendants were required to speak accurately and completely" and reveal that the customer had solvency issues). Zhang chose not to do so, touting the Company's supply chain risk mitigation (¶ 37) while failing to inform investors that at the time

10

of the statement the risk approach had just recently failed on a significant magnitude, resulting in material revenue weaknesses of 92% year-over-year (¶¶ 9, 39-40).

Defendant's arguments regarding Zhang's statements fail. DB at 16-17. Contrary to Defendant's argument (DB at 15), Zhang did not say that the Company's approach is "intended" to reduce supply-chain risk. It was not a hypothetical but a concrete positive assertion about reduction of supply-chain risk. ¶ 37. More importantly, Defendant's argument misses the point because, as noted above, Zhang knew but failed to inform investors that the Company had experienced "supply chain disruptions" during the previous quarter.[4] *Caiola*, 295 F.3d at 331 ("Once Citibank chose to discuss its hedging strategy, it had a duty to be both accurate and complete."); *Christine Asia Co. Ltd. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) ("failure to disclose the [negative] meeting concealed the true facts about the threat to the company"). For this reason, it does not matter that Zhang's statement did not say that Canaan had "eliminated" all supply chain risk. DB at 16. "A duty to disclose arises whenever secret information renders prior public statements materially misleading, not merely when the information completely negates the public statements." *Time Warner*, 9 F.3d at 268.

Canaan also disputes what a "reasonable investor" would have understood from Zhang's statement, claiming that investors would have known that the "reduced . . . risk" would not have insulated the Company from worldwide shortages.[5] DB at 17 n.4. First, such an argument fails as

---

[4] Canaan's cited cases were each missing this critical factor. DB at 16. For example, in *Ladmen Partners, Inc. v. Globalstar, Inc.*, the statements were not "inconsistent" because the company had disclosed that issues existed (No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *16 n.16 (S.D.N.Y. Sept. 30, 2008)), whereas here the known supply chain issues were not disclosed. In *In re Barrick Gold Corp. Sec. Litig.*, the spill occurred *after* the statement, not before as here. 341 F. Supp. 3d 358, 371 (S.D.N.Y. 2018) (stressing that the statement date was prior to the spill).

[5] In addition to the reasons above, such an argument should be dismissed because it is a truth-on-the-market argument which should not be considered at this stage of the litigation. *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 237-39 (S.D.N.Y. 2006). *See also Ganino*, 228 F.3d at 167 ("corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements").

Zhang also explicitly stated that the Company had secured chips ahead of the shortage (¶ 37) and thus read in context, a reasonable investor could have understood that the Company was insulated from the shortage. *In re Morgan Stanley Info Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) ("The literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of the defendants' representations, taken together and in context.").

Second, "the Court must accept as true the complaint's well-pleaded allegations, without regard to defendants' competing accounts" of what investors might have understood. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020); *see also Inv. Tech. Grp.*, 251 F. Supp. 3d at 609 ("Unless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances in which they were made."); *Iwa Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 146 (2d Cir. 2021) (declining to accept defendants' reasonable "contrary and competing 'explanation'" as it "is entitled to little weight at this stage of litigation"); *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 689 (5th Cir. 2014) (declining to consider defendant's interpretation of a term because plaintiff's interpretation was plausible). In all events, Plaintiff's version must be credited because, at worst, reasonable minds could differ on whether the supply chain statements are misleading. *See, e.g.*, *In re DDi Corp. Corp. Sec. Litig.*, Master File No. CV 03-7063 NM (SJHx), 2005 WL 3090882, at *2, *12 & *n.14 (C.D. Cal. July 20, 2005).

Canaan also asserts that Defendants cannot be liable for the statements because they were included in an article written by an independent reporter. DB at 14-16. Not only are each of Defendant's cited cases distinguishable, but numerous courts have held otherwise. For example, in *In re Columbia Sec. Litig.*, the court found defendants could be liable for statements in a *Forbes*

12

article, denying defendants' argument that they had "'less than complete control' over the content", as plaintiffs had alleged that the statement was made by the defendant and while there was "less than complete control over what the reporter wrote, [defendants] did have control over what [the President of the company] said[.]" *Columbia*, 747 F. Supp. at 245.  The court went on to state that *Milberg v. Western Pacific R.R. Co.*, 51 F.R.D. 280 (S.D.N.Y. 1970) (DB at 15-16) was not to the contrary as in *Milberg* the complaint did not allege that the company officials made the statements printed in the article.  *Columbia*, 747 F. Supp. at 245 (citing *Milberg*, 51 F.R.D. at 282).  *See also In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 662-64 (S.D.N.Y. 2017) (statements by company to press actionable); *In re MCI Worldcom Sec. Litig.*, 93 F. Supp. 2d 276, 280-81 (E.D.N.Y. 2000) (statement to press actionable).

Here, the Complaint explicitly states that "Zhang was quoted in the article . . . stating in relevant part" (¶ 37) and notes that the article was the result of "an interview with defendant Zhang" (¶ 36).  Furthermore, the article includes statements in quotations from Zhang and states that "Zhang said" (¶ 37) and therefore, contrary to Defendant's claim otherwise (DB at 15), it *can* be reasonably inferred to have originated from Zhang.[6]  *Am. Power Conversation Corp.*, 945 F. Supp. at 433 (statements in article can be attributable to company where even though no direct quotes, "it is reasonable to infer that the writer received all her information . . . from conversations with the [company] product managers named in the article").

---

[6]  In *Frank H. Cobb, Inc. v. Cooper Cos.*, No. 89 Civ. 5323 (MGC), 1992 WL 77600 (S.D.N.Y. Mar. 20, 1992), relied upon by Defendant (DB at 15), there was no interview and no similar attribution to statements directly from the defendant like here, the article merely stated that "'The Sturmans, who paid an average of $12.84 per share for their stake, believe that Cooper could bring in well over $1 billion, or $20 to $30 a share.'" *Frank H. Cobb, Inc.*, 1992 WL 77600, at *4.  Likewise, in *Hershfang v. Citicorp* (DB at 15), the statements were "not attributed to any of the defendants[.]" 767 F. Supp. 1251, 1255 (S.D.N.Y. 1991).  In fact, the court actually considered statements attributable to defendants in other articles and found them to be non-actionable based on other reasons. *Id.* at 1256.

## 2.    Material Misstatements and Omissions
### Concerning Canaan's Pre-Orders

Defendants also misled the market with their November 30, 2020 and February 10, 2021 statements regarding Canaan's pre-orders.  After reporting the negative news on November 30, 2020 that total net revenues had decreased 75.7% year-over-year during the third quarter 2020, Defendants stated that "[h]owever, the demand for mining machines in the market continued to rebound during the third quarter, and we have received a large number of pre-sale orders which are scheduled for delivery starting in the fourth quarter of 2020."  ¶ 28.  Defendants also stated that "new generations of mining machines and AI chips in the pipeline" would "continue to bolster [Canaan's] competitive advantages and solidify [its] market leadership going forward."  *Id.*

On February 10, 2021, Defendants claimed that "revenue visibility ha[d] improved substantially" due to orders placed with "prepayment" which was possible because in "late 2020" the Company had "shifted our client base to mostly publicly traded companies and bitcoin-focused investment funds which tend to place sizable orders with longer-term commitment."  ¶ 32.  Defendants added that the change in customer type and prepayment orders allowed the Company "to leverage such information and additional liquidity to conduct its component purchases" and "plan our production and logistics well in advance[.]"  *Id.*

Each of the above statements was materially false and misleading, omitting (or failing to correct or update with regards to the November 30, 2020 statements)[7] that the pre-sale and

---

[7] Defendant argues that the November 30, 2020 statements are not actionable because they were made before the Class Period, although recognizing that there is a duty to correct and a duty to update.  DB at 9-10.  "The duty to correct applies when 'a company makes a historical statement that at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not."  *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998).  Here, the first statement regarding demand for mining machines and pre-sale order deliveries in the fourth quarter was an historical statement that later become misleading during the Class Period when Defendants learned that the increasing bitcoin market made those pre-sale orders a detriment rather than something positive, and thus the pleadings met the requirements for a duty to correct.  A duty to update exists "when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event."  *Id.* at 110.  The additional November 30, 2020 statements were subject to a duty to update because although reasonable to believe at the time

prepayment orders actually harmed Canaan's financial outcome for the fourth quarter of 2020. *E.g.*, ¶¶ 38-40.  As revealed on April 12, 2021, "since the second half of last year and the first half of this year, most of the mining machines were sold as future contracts, which had a fixed price. And the prices were actually lower than our existing machines." ¶ 40.  Thus, the large number of pre-orders may have created "revenue visibility," those orders hurt Canaan's financial performance because the Company could not take advantage of rising bitcoin prices and new machine generations.  *Id.*  Defendants' omission of the true effect of the pre-payment orders "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005); *see also Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010) ("A statement is misleading if a reasonable investor would have received a false impression from the statement.").

Defendant attempts to sweep under the rug the material omission, claiming that the Complaint merely alleges without sufficient nexus that "positive statements about [Canaan's] projected 2021 performance somehow mislead investors about its fourth-quarter financial results[.]" DB at 11-13.  Defendant misstates or misconstrues what is alleged; it is not merely statements about 2021 projections, but positive statements about (1) orders in "*late 2020* and early 2021," which include the fourth quarter 2020 and (2) statements about the positive effect of "pre-orders" and "pre-payments" when it was known, but omitted, that the Company would actually be worse off due to the pre-orders as it prevented Canaan from taking advantage of the rising bitcoin prices.

---

that "new generations of mining machines" would "bolster [Canaan's] competitive advantages", once the bitcoin market prices rose, due to the fact that Company's mining machines were sold on prepayment, the Company was not at a competitive advantage, but a disadvantage. *See, e.g.*, *Time Warner*, 9 F.3d at 262, 268.

Thus, not only is there sufficient nexus, but Canaan's assertion that no affirmative duty existed for which they had to disclose fourth quarter 2020 performance is a red herring.  DB at 11.  Even absent an affirmative duty, once Defendants chose to speak on the issue of pre-sale orders and their purportedly positive effect, "there is a duty to tell the whole truth."  *Setzer*, 968 F.3d at 214, n.15.  Additionally, Defendant incorrectly states that foreign private issuers such as Canaan are not required to make "annual reports at all."  DB at 11 (citing 17 C.F.R. § 240.13a-13(b)).  17 C.F.R. § 240.13a-13(b) only speaks to quarterly reports, 17 C.F.R. § 249.220f requires foreign private issuers to file annual reports.

*In re Ferroglobe PLC Sec. Litig.*, Master File No. 1:19-cv-00629 (RA), 2020 WL 658715 (S.D.N.Y. Nov. 10, 2020), relied upon by Defendant, is <u>not</u> "squarely on point."  DB at 12-13.  Unlike *Ferroglobe*, here the statements were not "expressly directed at the future" but included the Company's fourth quarter 2020 demand and orders and its then-current quarter demand and orders, not some future five years later as in *Ferroglobe*.  *Id.* at *8-9.  *In re Omega Healthcare Inv'rs., Inc. Securities. Litigation*, No. 17 Civ. 8983 (NRB), 2021 WL 4443562 (S.D.N.Y. Sept. 28, 2021) (DB at 11-12), is factually distinguishable.  In *Omega*, the alleged misstatements were about dividends and were found to lack sufficient relation to omissions about financial conditions due to missed rent payments.  *Omega*, 2021 WL 4443562, at *9.  Here, the alleged misstatements are about prepayment orders and the omission of the fact that the *very same* prepayment orders harmed the Company's financials.

In addition, Canaan's attempt to re-characterize Plaintiff's allegations as a demand for "every conceivable detail" and "all negative facts" (DB at 8, 13-14) is misleading.  The statements issued regarding the pre-orders were false and misleading because of contrary facts known by Defendants at the time the statements were made (after the Class Period began for the November

16

30, 2020 statements) as well as because Defendants did not disclose material information that otherwise made their public statements misleading.  As detailed herein, there was a direct connection between the false and misleading statements about the positive effect of late 2020 prepayment orders and fourth quarter 2020 earnings which omitted the known negative details that such orders would actually detract from earnings.

The omission was material and Defendant's veiled materiality argument otherwise (DB at 8, 13-14) fails.  A court may not dismiss a securities fraud claim on grounds of materiality unless the omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000); *Cohen v. Kitov Pharm. Holdings, Ltd.*, No. 17 Civ. 0917 (LGS), 2018 WL 1406619, at *4 (S.D.N.Y. Mar. 20, 2018).[8]  The magnitude of the effect of the pre-sale orders on the Company's financial results (a decline of 92% year-over-year, ¶¶ 9, 39) is more than sufficient to overcome that hurdle, as is the significant stock drop of almost 30% when the truth was revealed (¶ 41), which confirms the materiality.  *E.g.*, *Christine Asia*, 718 F. App'x at 22 (importance of information illustrated by significant stock drop on revelation).

C.    **The Complaint Adequately Alleges a Strong Inference Scienter**

The PSLRA requires plaintiffs to plead facts "giving rise to a strong inference that the defendant acted with the required state of mind."  *Emps' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015).  The inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

---

[8] In fact, materiality is "rarely dispositive on a motion to dismiss."  *Morgan Stanley Info. Fund*, 592 F.3d at 360. *See also TSC Indus. v. Northway*, 426 U.S. 438, 450 (1976) (issues of materiality are "peculiarly ones for the trier of fact" and should not be decided on a motion to dismiss).

17

U.S. 308, 323 (2007).   Thus, Defendant's invitation to the Court to scrutinize each scienter allegation in isolation (DB at 17-20) is improper.  The Complaint's inference of scienter need only be cogent and compelling—not the only inference raised by the allegations, the most plausible inference, or irrefutable.  *Id.* at 323-24; *see also Akerman v. Arotech Corp.*, 608 F. Supp. 2d 372, 382 (E.D.N.Y. 2009) (dismissal inappropriate where competing inferences "in equipoise").  To allege scienter, the complaint must show "either: 1) a motive and opportunity to commit the fraud; or 2) strong circumstantial evidence of conscious misbehavior or recklessness."  *Blanford*, 794 F.3d at 306.

### 1.    Defendants Knew or Recklessly Disregarded Critical Facts Undermining their Public Statements

Reckless conduct amounts to actionable scienter if the conduct was "highly unreasonable" and an "extreme departure from the standards of ordinary care."  *Novak*, 216 F.3d at 308.  Scienter based on conscious misbehavior or recklessness may be established by alleging "defendants' knowledge of facts or access to information contradicting their public statements."  *Id.*; *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) ("[S]cienter may be found where there are 'specific allegations of various reasonably available facts, or 'red flags,' that should have put the officers on notice' that the public statement were false.").  "A corporation's duty to disclose is especially obvious—and, thus, a strong inference of recklessness is adequately pled—where the corporation chooses to selectively reveal positive information on a specific topic while concealing closely-related negative information."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM), 2013 WL 6233561, at *22 (S.D.N.Y. Dec. 2, 2013).

Defendant argues that scienter is inadequately pled because: (1) there are insufficient allegations as to the Defendants' states of mind and/or what Defendants actually knew at the time of their statements and the Complaint only includes "conclusory"  and core operations allegations

18

(DB at 17-19); (2) the magnitude of the fourth quarter 2020 financial decline is an insufficient scienter allegation (DB at 19, n.5); (3) the CFO departure allegations are insufficient (DB at 20); (4) there are no allegations of stock sales (DB at 18); and (5) there is a more compelling competing inference that Defendants did not disclose the negative fourth quarter 2020 result because they were "unrelated" to the positive 2021 performance (DB at 19). Each of these arguments are wrong and should be rejected.

First, the Complaint does not merely plead "conclusory" core operations type allegations. DB at 17-19. A strong inference of recklessness may "arise where the complaint sufficiently alleges that the defendants . . . failed to check information they had a duty to monitor." *Novak*, 216 F.3d at 308, 311 ("An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness."). Where it is pled that defendants "knew facts or *had access to information* suggesting that their public statements were not accurate . . . [s]uch allegations alone are enough to satisfy the pleading requirements for scienter." *Freudenberg*, 712 F. Supp. 2d at 196-97. Furthermore, plaintiffs can plead scienter "where there are specific allegations of various *reasonably available facts*, or 'red flags,' that should have put the officers on notice that the public statements were false." *Refco*, 503 F. Supp. 2d at 649.

The Complaint alleges that Defendants knew or should have known of material information available to them at the time of their statements which contradicted their positive claims of the effects of pre-sale orders and that the Company had obtained chips in advance of the worldwide shortage. More specifically, at the time Defendants made the statements regarding prepayment orders on February 10, 2021, they had access to internal information that made it abundantly clear that the prepayment orders were harming the Company profits because, among other things: (1) by Defendants' own admissions, the prepayment orders were received and began shipping well before

19

the statements, in the third and fourth quarters of 2020 (¶¶ 28, 32); (2) the price of bitcoin was publicly known; (3) the effect of bitcoin prices on Canaan's sales was known by Defendants (*e.g.*, ¶ 39, "as the price of Bitcoin rallied in late 2020, we experienced a surge of demand for high-quality mining machines"); and (4) the fourth quarter of 2020 had ended six weeks prior with financial results showing a 77% decline in net revenues quarter-over-quarter and a 92% decline year-over-year (¶¶ 5, 39, 46-47). "Under such circumstances, defendants knew or, more importantly should have known that they were misrepresenting material facts related to the corporation." *Novak*, 216 F.3d at 308; *see also In re NIO Sec. Litig.*, No. 19-CV-1424 (NGG) (JRC), 2021 WL 3566300, at *9-10 (E.D.N.Y. Aug. 12, 2021) (clear cut nature of whether a factory was under construction or not enough to show that statements representing under construction when it was not enough to plead recklessness).

The same information was known to Zhang when he made the positive April 9, 2021 statements regarding Canaan's supply chain risks and that the Company had "secured chips" prior to the "worldwide shortage" just ***three days prior*** to (notably on a Friday with the corrective disclosure being issued on a Monday), Canaan's release of its financial results for the fourth quarter and full year 2020 which included an explicit statement in the press release that "supply chain disruptions . . . negatively impacted [the Company's] revenues in the fourth quarter of 2020[.]" ¶¶ 5, 28, 32, 39, 46-47. For the April 9, 2021 statements, not only is it inconceivable that Zhang did not know the fourth quarter 2020 results at the time of the statements due to the fact that the Company's results were released immediately thereafter (¶ 46), but that Zhang knew, or was reckless in not knowing, that disruptions in the supply chain was one of the reasons for the negative results. It would clearly be an "egregious refusal to see the obvious" if the CEO did not know the reasons why quarterly results were 92% lower year-over-year, over three months after the quarter

20

had ended and ***just one business day prior to*** the public release of the results.[9]  *City of Warren*, 477 F. Supp. 3d at 136 ("it is virtually inconceivable that the CEO and Co-Presidents" would not have been aware of important contract termination).

The fact that Zhang's misrepresentations were revealed in just days further supports a strong inference of scienter.  *See, e.g.*, *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 271 (3d Cir. 2009) ("temporal proximity" of defendants denials to revelation of the truth supports inference of scienter); *In re Pareteum Sec. Litig.*, No. 19 Civ. 9767 (AKH), 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021) (similar) (collecting cases).  Quite simply, Zhang either knew that supply chain disruptions had caused negative fourth quarter 2020 earnings or failed to check or review information that he had a duty to monitor.  *Novak*, 216 F.3d at 308.

Further, Zhang's scienter is supported by his detailed statements admitting to having knowledge of Canaan's mining machine business, the Company's pre-orders and its supply chain risk.  ¶¶ 28, 32, 37, 45.  "Actively communicating with the public about [the issues] demonstrates defendants' sensitivity to it."  *Gauquie v. Albany Molecular Research, Inc.*, No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) ("absurd" to suggest executive who communicated with press about issues had no scienter);; *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012) (specificity of defendants' statements about projections and performance strong circumstantial evidence of scienter).

---

[9] Citing to introduction paragraphs, Defendant asserts that the Complaint merely contains formulaic pleading (DB at 18-19), but the above allegations and facts rise to far more.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) (DB at 18) is distinguishable, containing allegations regarding the adequacy of loan loss reserves when the then-current data could not be shown to be inconsistent with the statements compared to here where the quarter was well over and financial information known or recklessly disregarded by the CEO and CFO of the Company.  Likewise, in *In re Duane Reade Inc. Sec. Litig.*, No. 02 Civ. 6478 (NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) (DB at 19), the allegations were forward-looking, with plaintiffs alleging that quarterly results "must have been apparent throughout the quarter" (2003 WL 22801416, at *10), not months after the quarter ended like here.

Additionally, Defendant argues that scienter allegations based on the Individual Defendants' "corporate position are entitled to no weight." DB at 17-18. Under the core operations doctrine, "if a plaintiff can plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent, or should have been apparent, an inference arises that high-level officers and directors had knowledge of those facts by virtue of their positions with the company." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004). It is well-recognized in this Circuit that core operations allegations "can provide supplemental support for allegations of scienter." *Celestica*, 455 F. App'x at 14 & n.3; *see also Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37-38 (S.D.N.Y. 2019) ("importance of EMEA channel inventory to Lexmark's business moves the needle in Plaintiffs' favor"); *In re Avon Sec. Litig.*, No. 19 Civ. 01420 (CM), 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019) (crediting scienter where "it would be absurd to suggest that [] senior management was unaware of widespread delinquency problem in the company's single largest market"). Here, not only is Canaan a small company with only 248 employees and management only consisting of 47 employees (¶ 49), the Company stated it depended on defendant Zhang, and Canaan's mining machine sales were the single largest income producing segment, comprising 94.4% of its total revenue, core to the Company's earnings picture (*id.*).

Second, Defendant argues that the magnitude of the negative fourth quarter 2020 results is a "non-starter." DB at 19, n.5. While the magnitude of the adverse results alone does not establish scienter, courts have consistently held that it "may contribute to an inference of scienter." *comScore*, 268 F. Supp. 3d at 553 (citing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001)); *see also Lea v. TAL Educ. Grp.*, 837 Fed. App'x 20 (2d Cir. 2020) (magnitude of

22

transactions supports scienter finding for defendant who was founder, Chairman, and CEO); *Lexmark*, 367 F. Supp. 3d at 38 ("Simply put, the magnitude of the aftershock suggests more than a careless mistake or trivial miscalculation"); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 327 (S.D.N.Y. 2001) ("here the magnitude of the write-off is compelling evidence that defendants' theretofore rosy projections were not entirely forthright").

Third, Defendant argues that the former CFO's departure cannot support scienter.  DB at 20.  In this Circuit, the timing and circumstances of officer resignations "may add some further weight to an overall inference of scienter." *Plumbers & Pipefitters Nat'l. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015); *Pareteum*, 2021 WL3540779, at *16 (similar) (collecting cases); *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) ("the timing and circumstances" of resignations can contribute to scienter).  The day prior to the beginning of the Class Period, over a month after the fourth quarter and full year 2020 financial results were known to Defendants, CFO Hong suddenly resigned.  ¶¶ 30, 48.  Not only does the resignation timing support scienter as it fits within the time frame of when the 2020 financial results were fully known, it also supports scienter due to the fact that the very next day the first false and misleading statements were made.  In order to offset the adverse effect of Hong's resignation, Defendants issued the misleadingly false statements regarding pre-orders while omitting the negative effect of those preorders.  ¶¶ 4, 48.  Indeed, even *The Motely Fool* noted the highly unusual issuance of the February 10, 2021 statements in light of Hong's resignation announcement.  ¶¶ 34, 48.

Fourth, Defendant argues that the lack of insider stock sale allegations cuts against scienter. DB at 18.  Not only are plaintiffs not required to plead motive or insider selling (*Tellabs*, 551 U.S.

23

at 325),[10] the absence of allegations of stock sales by the Individual Defendants is hardly probative here.  As a foreign private issuer, Canaan's officers and directors do not have to report insider transactions (17 C.F.R. § 240.3a12-3), and thus the lack of alleged stock sales here is meaningless because that information is not available.  Courts relax the required pleading standards "when factual information is peculiarly within the defendant's knowledge or control."  *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000).

Finally, Defendant argues that the more compelling "plausible" inference is that Defendants did not disclose the truth because the fourth quarter and full year 2020 results were unrelated to the alleged misstatements.  DB at 19.  This argument, more focused on falsity and materiality than scienter, is not more plausible, misses the point, and disregards the specific facts demonstrating Defendants' contemporaneous knowledge of the effect of the pre-orders on Canaan's profits and that supply chain disruptions caused revenues to fall 92% year-over-year, among other things.  "[T]he proper scienter inquiry is whether Defendants knew, or more importantly, should have known that they were misrepresenting material facts."  *Micholle v. Ophthotech Corp.*, No. 17-cv-210 (VSB), 2019 WL 4464802, at *17 (S.D.N.Y. Sept. 18, 2019).  As detailed above, Defendants clearly "had access to" information "suggesting that their public statements were not accurate," which is plainly sufficient to establish scienter.  *Blanford*, 794 F.3d at 306.

### 2.    <u>A Strong Inference of Corporate Scienter Is Alleged</u>

Corporate scienter is amply alleged based on the Individual Defendants' scienter.  *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir.

---

[10]  *See also No. 84 Emp'r Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) ("the lack of stock sales by a defendant is not dispositive as to scienter."); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 15 (D. Mass. 2004) ("[T]he absence of stock trading profit does not establish the absence of a scheme to profit through insider trading.  It only establishes the absence of a successful scheme.").

2008) ("In most cases, the most straightforward way to raise [an inference of scienter] for a corporate defendant will be to plead it for an individual defendant."); *Electrobras*, 245 F. Supp. 3d at 469-70 ("[B]ecause the [complaint] properly alleges scienter against two key officers of Electrobras, it necessarily alleges scienter against Electrobras itself."). As detailed above, a strong inference of scienter is alleged for the Individual Defendants, and thus scienter against defendant Canaan itself.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety. If the Court grants any part of the Motion, Plaintiffs respectfully request leave to amend. *See Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *7 (S.D.N.Y. Dec. 27, 2017).

Dated:  June 7, 2022                                    Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

*/s/ Lawrence P. Eagel*
Lawrence P. Eagel
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email:  eagel@bespc.com
        fortunato@bespc.com
        passmore@bespc.com

*Lead Counsel for Lead Plaintiffs*
*and the Proposed Class*

25