**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JASON DENNY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> -against- <br><br> CANAAN INC., NANGENG ZHANG, AND TONG HE, <br><br> Defendants. | Case No. 1:21-cv-03299 (JPC) |

**<u>DEFENDANT CANAAN INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Dated:  July 7, 2022

O'MELVENY & MYERS LLP
Daniel L. Cantor
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 326-2000
Email: dcantor@omm.com

William K. Pao (*pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone: (213) 430-6000
Email: wpao@omm.com

*Attorneys for Defendant Canaan Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

    I.     PLAINTIFF FAILS TO ALLEGE A FALSE OR MISLEADING
          STATEMENT. ............................................................................................... 2

          A.     The November 30, 2020 Press Release ....................................................... 2

          B.     The February 10, 2021 Press Release ......................................................... 3

          C.     The April 9, 2021 *Decrypt* Article. ........................................................... 4

                 1.     The alleged statement about Canaan securing chips before a
                       global shortage is nonactionable and not false or misleading
                       in any event. ................................................................................. 5

                 2.     Mr. Zhang's quoted statement about Canaan's actions to
                       "reduce supply-chain risks" was not false or misleading .............. 7

    II.    PLAINTIFF FAILS TO MEET HIS HIGH BURDEN FOR ALLEGING
          A STRONG INFERENCE OF SCIENTER. ......................................................... 8

CONCLUSION ......................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Trs. of City of Ft. Lauderdale Gen. Emp. Ret. Sys. v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011) ...................................................................... 10

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153 (S.D.N.Y. 2018) ....................................................................... 7

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018) ....................................................................... 3

*In re Columbia Sec. Litig.*,
747 F. Supp. 237 (S.D.N.Y. 1990) ............................................................................ 6

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017) ..................................................................... 10

*In re Express Scripts Holding Co. Sec. Litig.*,
2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017).......................................................... 10

*In re Ferroglobe PLC Sec. Litig.*,
2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020).......................................................... 4

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998) ..................................................................................... 2

*In re Newbridge Networks Sec. Litig.*,
926 F. Supp. 1163 (D.D.C. 1996)......................................................................... 5, 6

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
2021 WL 4443562 (S.D.N.Y. Sept. 28, 2021)......................................................... 4

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 2011)............................................................... 10

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ..................................................................................... 8

*McGee v. McGready*,
2019 WL 6341290 (S.D.N.Y. Nov. 26, 2019)......................................................... 2

*New Orleans Emp. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) .............................................................................. 10

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Intern. N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ...................................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Rich v. Associated Brands, Inc.*,
  379 F. App'x 78 (2d Cir. 2010) ............................................................................................... 8

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
  531 F.3d 190 (2d Cir. 2008) .................................................................................................. 9

## PRELIMINARY STATEMENT[1]

In an attempt to paper over the AC's defects, Plaintiff conflates statements and invents quotes from Canaan's public disclosures, manufacturing nonexistent "admissions" designed to satisfy his Section 10(b) pleading burden.  Stripped of these sleights of hand, the Opposition contains no meaningful response to Canaan's arguments warranting dismissal.

The Opposition confirms that none of the three sets of statements Plaintiff relies on to allege falsity can support his Section 10(b) claim.  First, there is no dispute that the November 30, 2020 press release predates the putative class period, and Plaintiff ignores controlling authority holding such statements nonactionable.  Second, Plaintiff points to statements in the November 30, 2020 press release and falsely claims they were made in the February 10, 2021 press release, hoping to conjure a nexus between challenged statements and "admissions" where none otherwise exists.  And third, Plaintiff cites inapposite case law to argue that unquoted statements made by an independent author in an April 9, 2021 *Decrypt* article, where the company neither endorsed nor controlled the article's contents, are somehow actionable under Section 10(b).  These misguided efforts cannot rehabilitate his deficient falsity allegations.

For scienter, Plaintiff again conflates statements, improperly imputes the *Decrypt* article to Canaan, and invents admissions to support his theory that Canaan acted with the requisite intent.  But neither these false claims nor Plaintiff's conclusory allegations and generic invocation of a core operations theory revive allegations woefully inadequate under the PSLRA.

The Court should dismiss the AC and reject Plaintiff's radical attempt to expand the federal securities laws such that no company could make a positive statement about its present status or future outlook without also disclosing past financial challenges.

---

[1] Unless otherwise noted, defined terms have the meanings identified in Canaan's Motion to Dismiss, internal citations and quotations are omitted, and emphases are added.

1

**ARGUMENT**

**I.    PLAINTIFF FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT.**

Canaan's opening brief demonstrated that the AC fails to allege adequately that Canaan made any materially false or misleading statement in either the November 30, 2020 press release, the February 10, 2021 press release, or the April 9, 2021 article published by *Decrypt*. Mot. at 8–17. Plaintiff unsuccessfully attempts to refute this showing.

**A.    The November 30, 2020 Press Release**

Plaintiff essentially ignores—and thus concedes—Canaan's dispositive threshold argument that statements in the November 30, 2020 press release are not actionable because they were made months before Plaintiff's putative class period. Mot. at 9; *see also McGee v. McGready*, 2019 WL 6341290, at *3 n.4 (S.D.N.Y. Nov. 26, 2019) (failure to oppose argument in motion deemed concession of argument). Plaintiff's only response, buried in a footnote, is to conflate Canaan's class-period argument with its argument that there was no duty to correct or update the November 30, 2020 press release. Opp. at 14 n.7. But Plaintiff misses the point because even if the press release could give rise to a duty to correct or update—and as demonstrated below it does not—the law is clear that Plaintiff cannot state a Section 10(b) claim based on statements made outside the class period. *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (challenged statement made the day before the start of the class period not considered on appeal). Plaintiff fails to address this case law, and his claims based on the November 30, 2020 press release should be dismissed for this reason alone.

Plaintiff's claim fails for the additional, independent reason that the AC does not allege any basis for imposing on Canaan a duty to correct or update the November 30, 2020 press release. Indeed, Plaintiff's assertion that statements in the November 30, 2020 press release only *later* became misleading, Opp. at 14, n.7, eviscerates his duty-to-correct argument because, as

2

the opening brief established (and Plaintiff does not challenge), there is no duty to correct statements that were true when made.  Mot. at 9.

Plaintiff's duty-to-update claim is also unavailing because it misrepresents what the press release actually said.  Plaintiff argues that although the press release's statement that "new generations of mining machines" would "bolster [Canaan's] competitive advantages" was true at the time, Canaan was required to disclose that the fixed-price sales model was a detriment to its "competitive advantage" once Canaan's mining machine prices rose with the value of bitcoin. Opp. at 14–15 n.7.  As an initial matter, the statement that new machines would "bolster our competitive advantages" is mere puffery and thus immaterial as a matter of law.  *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 399 (S.D.N.Y. 2018) ("competitive advantage" deemed nonactionable puffery).  Regardless, Plaintiff quotes the language in a selective, misleading way.  What Canaan said is "the enhanced ***performance*** of our new products"—not ***presales***—"will continue to bolster our competitive advantages."  Plaintiff offers no reason Canaan would be required to update statements about enhanced product performance simply because unrelated information about presales became available.

### B.    The February 10, 2021 Press Release

Plaintiff does not dispute that, on its face, the February 10, 2021 press release addresses Canaan's ability to forecast revenue for 2021 and beyond, and how that would impact its future performance. Opp. at 14.  His assertion that those forward-looking statements somehow obligated Canaan to disclose its 2020 fourth-quarter financial results in the February 10, 2021 press release fails as a matter of law because Plaintiff cannot allege a sufficiently close nexus between Canaan's past performance and its ability to forecast future revenue.  Mot. at 11–14.

Plaintiff unsuccessfully attempts to create the necessary nexus by deliberately misconstruing the February 10, 2021 press release.  For example, Plaintiff misleadingly uses

3

quotation marks to claim that the February 10, 2021 press release made "positive statements about [] orders in '*late 2020* and early 2021.'"  Opp. at 15 (emphasis in original).  But the quoted statement appears nowhere in the press release.  Rather, Plaintiff improperly conflates the November 30, 2020 press release—which does refer to presale orders in 2020, Ex. 1 at 2—with the February 10, 2021 press release, which refers only to prepaid orders in "***2021 and beyond***," Ex. 4 at 1.  The sole reference to 2020 in the February 10, 2021 press release concerns a shift in client base that occurred "[i]n late 2020," not presale orders.  *Id.*

Plaintiff's reliance on the truism that Canaan had "a duty to tell the whole truth" when making statements about the "positive effect" of prepaid orders in the February 10, 2021 press release proves too much.  Opp. at 16.  Plaintiff cites no case for the proposition that the mere mention of prepaid orders in its press release required Canaan to disclose every fact it allegedly knew about prepaid orders, regardless of whether that fact was related to the press release's subject matter.  The press release discussed forecasting future revenue, Ex. 4 at 1; that did not give rise to a duty to discuss past financial results.  *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *8–9 (S.D.N.Y. Nov. 10, 2020); *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 2021 WL 4443562, at *9 (S.D.N.Y. Sept. 28, 2021).  Plaintiff's attempt to distinguish *Ferroglobe* and *Omega* is unavailing because it relies on the false premise that the February 10, 2021 press release referred to 2020 prepaid orders.[2]  *See* Opp. at 16.

### C.    The April 9, 2021 *Decrypt* Article.

Plaintiff's Opposition makes clear that his claim arising from the April 9, 2021 *Decrypt* article fails as a matter of law because it is improperly based on a combination of statements by

---

[2] Plaintiff's materiality argument is a red herring, *see* Opp. at 17; Canaan has not moved to dismiss the AC on that basis.

an independent author, deceptively edited snippets of public comments by Canaan, and unreasonable inferences Plaintiff draws from otherwise true statements. Opp. at 9–13.

### 1. *The alleged statement about Canaan securing chips before a global shortage is nonactionable and not false or misleading in any event.*

Plaintiff's attack on the article's statement that Canaan had "secured chips from a number of fabrication plants in advance of the worldwide shortage of processors," deliberately ignores that this statement was written by an independent author, and repeats the AC's demonstrably false allegation that the statement was a direct quotation of Mr. Zhang. *See* Opp. at 13. Plaintiff fails to grasp the significance of an **unquoted** assertion attributed to Mr. Zhang in an article that contains at least nine direct quotations. Ex. 6. Plaintiff's assertion that the statement "can be reasonably inferred to have originated from Zhang," Opp. at 13, misses the point: there is no way to know what words Mr. Zhang actually used or what point he was making. Accordingly, as Canaan's Motion explained, courts hold third-party statements like these unreliable and thus nonactionable under Section 10(b). Mot. at 14–16; *see also In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1171 (D.D.C. 1996) (analyst statement nonactionable under Section 10(b) because plaintiffs failed to allege defendant endorsed and controlled it, and author "might quote corporate spokespersons out of context or inaccurately interpret remarks made by corporate insiders"). That is especially critical here because, as discussed below, Plaintiff twists the author's statement into a representation by Canaan that it had not experienced a shortage of chips—even though the article says no such thing.

Plaintiff's case law is inapposite. Opp. at 12–13. While some courts have held that third-party statements can be actionable under Section 10(b), they do so where, for example, the statement merely reports a simple denial of a fact and thus poses little risk of being misinterpreted or misstated by the author. *E.g.*, *In re Columbia Sec. Litig.*, 747 F. Supp. 237,

5

245 (S.D.N.Y. 1990) (report of corporate agent's denial of merger discussions actionable where plaintiff claimed denial was false or misleading).  Here, the challenged statement is more than a mere fact denial and is thus subject to heightened risk of misinterpretation.[3]  The Court should follow case law disallowing third-party statements, *see* Mot. at 15, or at least require Plaintiff to allege facts showing that Canaan endorsed and controlled the statements before they can be actionable under Section 10(b), *In re Newbridge Networks*, 926 F. Supp. at 1171.

Plaintiff also contends that the "statement regarding securing chips was an outright falsehood" because Canaan disclosed on April 12, 2021, that during the fourth quarter of 2020 it had experienced "a severe supply shortage." Opp. at 9.  But there is nothing inconsistent about saying, on the one hand, that "in advance of the worldwide shortage," Canaan had obtained an unspecified number of chips and, on the other hand, that Canaan later experienced a supposedly "severe" chip shortage—the existence of a shortage does not negate the fact that Canaan acquired some number of chips.  The preceding sentence—"But Canaan anticipates that it ***will*** have no problem fulfilling its bulging order book"—also makes clear that the statement was meant to suggest only that Canaan would have no problems fulfilling orders going forward, not that there were never any such problems previously.  AC ¶ 37.

Moreover, Plaintiff uses selective quotations to invent the "admission" of a Canaan chip shortage he claims rendered the article's statement misleading.  Contrary to Plaintiff's assertion, during the April 12 earnings call, Mr. Zhang did not say that Canaan had experienced "a severe supply shortage" of its "mining machine" chips. Opp. at 9.  Rather, Mr. Zhang explained that "mining machine manufacturers generally use Bitcoin prices to . . . determine the production volume of their mining machines," and due to low bitcoin prices, "***most mining machine***

---

[3] Indeed, the author appears to have taken Mr. Zhang's alleged statement and infused her own interpretation, conveying a message not inherent in the statement itself.  *See* Ex. 6.

*manufacturers* reduced their investment in fabrication"—thus, when bitcoin "bounced back," "we saw a severe supply shortage *in the industry*." Ex. 9 at 10.[4]  In other words, Mr. Zhang was referring to the entire mining machine manufacturing industry, not Canaan.  Indeed, Mr. Zhang made clear that Canaan had adopted strategies that he believed would allow Canaan to "keep[] up" and "effectively secure the delivery of our chips from our foundry partners."  *Id*.

Plaintiff's failure to allege that Canaan or Mr. Zhang controlled what appeared in the *Decrypt* article only serves to reinforce the problem of relying on an independent journalist's article to plead an omissions-based Section 10(b) claim.  Mr. Zhang could have disclosed to the author everything Plaintiff claims he should have, and the author (or her editor) might have chosen to ignore it.  Nor can Plaintiff impute the timing of the article's publication to Canaan to support falsity.  Opp. at 10.  Plaintiff does not allege that Mr. Zhang or Canaan had any control over when the *Decrypt* article would be published—or even how long before April 12 Mr. Zhang's interview occurred.

### 2.    *Mr. Zhang's quoted statement about Canaan's actions to "reduce supply-chain risks" was not false or misleading.*

Plaintiff's assertion that Mr. Zhang's quoted statement in the *Decrypt* article about Canaan's "approach" to reducing supply-chain risk constituted a false representation that Canaan had not suffered *any* supply-chain disruption, Opp. at 10–12, is illogical and inconsistent with established case law holding that disclosure of prophylactic measures to avoid risk does not give rise to a duty to disclose the effectiveness of those measures.  *E.g.*, *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 163–64 (S.D.N.Y. 2018) (disclosure of compliance program implementation did not create duty to disclose whether program was effective).

---

[4] As Canaan noted, the Court may take judicial notice of the entire transcript of the earnings call, and also consider it under the incorporation by reference doctrine.  ECF No. 71 at 3–5.  Plaintiff does not contest this.  *See* ECF No. 73.

Plaintiff cannot salvage his risk allegation by characterizing it as a reasonable inference when combined with the alleged statement about "securing" chips. Opp. at 11–12. First, as discussed, the securing chips statement and its proximity to Mr. Zhang's quote about reducing supply-chain risk was an editorial choice by an independent journalist, not a Canaan disclosure integrating those statements. Second, the inference that Plaintiff seeks to draw is unreasonable and implausible because it assumes that investors equated "reduce" with "eliminate," even though the words are not synonymous.[5] *See Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) (rejecting argument that reasonable investor would believe "encouraging top-line results" equated to company's entire study population, which failed to achieve efficacy results).

Once again, Plaintiff mischaracterizes the "disclosure" that supposedly rendered Canaan's statement misleading, claiming that Canaan's disclosure of "supply chain disruptions" somehow proves that Canaan's "risk approach" had failed. Opp. at 10–11. Neither Canaan's April 12, 2021 press release nor the earnings call transcript links the reduced revenues with an alleged inability to procure sufficient chips. And while Canaan disclosed that "supply chain disruptions . . . negatively impacted [its] revenues," it did not state, or even suggest, that supply-chain disruptions were a substantial cause of Canaan's revenue decline. Thus, even if the *Decrypt* statements constituted a representation that Canaan had eliminated the risk associated with chip supply, no subsequent disclosure rendered the representation false or misleading.

## II. PLAINTIFF FAILS TO MEET HIS HIGH BURDEN FOR ALLEGING A STRONG INFERENCE OF SCIENTER.

Canaan's Motion demonstrated that the AC's reliance on formulaic scienter allegations is insufficient to satisfy Plaintiff's pleading burden under the PSLRA. Mot. at 18. The Opposition

---

[5] Plaintiff claims that the Court must credit only Plaintiff's version of what a reasonable investor would believe. Opp. at 12. The Court need only accept *plausible* allegations, not Plaintiff's *im*plausible assertions here. *Rich v. Associated Brands, Inc.*, 379 F. App'x 78, 80 (2d Cir. 2010) (rejecting implausible allegations).

repeats this failed approach, offering citations to general principles while failing to show that Plaintiff has alleged facts supporting a strong inference of scienter.  Opp. at 17–25.

Plaintiff argues that Canaan knew or should have known "material information" contradicting February 10, 2021 statements about presale orders and April 9, 2021 statements about obtaining chips before a worldwide shortage.  Opp. at 19.  But the AC contains no particularized allegations to support this bald assertion.  For example, Plaintiff fails to identify any report or statement containing the fourth-quarter 2020 results that was available before the challenged statements were made.  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (plaintiffs "must specifically identify the reports or statements" where they "contend defendants had access to contrary facts").

Plaintiff can muster only conclusory allegations that Canaan "knew" or was "reckless in not knowing, the true undisclosed facts" when it "made [its] false and misleading representations to investors."  AC ¶ 44.  But as Canaan argued in its Motion, these plainly fail under *Twombly/Iqbal*, Rule 9(b), and the PSLRA.  Mot. at 19.  That Canaan would not disclose its financial results until two months after its February 10, 2021 statements also militates heavily against an inference that it was aware of those results in February.  And because Plaintiff makes no effort to allege when Mr. Zhang made the alleged statements cited in the *Decrypt* article or that Mr. Zhang controlled its publication, Plaintiff is foreclosed from arguing that the timing of statements in the article somehow supports scienter.  Opp. at 20–21.

Plaintiff also argues that Mr. Zhang's scienter is supported by his statements that he has knowledge of Canaan's mining machine business, its preorders, and its supply-chain risk.  Opp. at 21.  This is not even colorable.  Crediting this argument would allow a plaintiff to establish scienter against any diligent executive officer.  *Board of Trs. of City of Ft. Lauderdale Gen.*

9

*Emp. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 881–82 (S.D.N.Y. 2011) (no scienter where plaintiff alleged executive officer's exposure to company's products and performance).

Plaintiff attempts to invoke the "core operations" doctrine by alleging that Canaan is a small company that stated it depended on Mr. Zhang, and that Canaan's mining machine sales were the single largest income-producing segment. Opp. at 22. Case law is clear, however, that allegations under the core operations doctrine are not an independently sufficient means of pleading scienter. *New Orleans Emp. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011). As discussed, Plaintiff has not adequately alleged that Canaan knew or recklessly disregarded facts undermining its public statements, so there are no scienter allegations that can be "bolstered" by the core operations doctrine. *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *18 (S.D.N.Y. Aug. 1, 2017).

Plaintiff's argument that Canaan's former CFO's resignation supports scienter also falls flat. Opp. at 23. As Canaan's Motion explained, an executive's resignation cannot be used to establish scienter unless there are facts showing a link between the resignation and the alleged fraud. Mot. at 20. The Opposition adds nothing to suggest Mr. Hong's departure was precipitated by wrongdoing, nor does it make any meaningful effort to refute Canaan's argument that Plaintiff's baseless, speculative insinuations cannot support scienter.[6] *Id.*

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Canaan's Motion, Canaan respectfully requests that the Court dismiss Plaintiff's AC with prejudice.

---

[6] Plaintiff's cases, Opp. at 23, all involved resignations precipitated by wrongdoing. *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Intern. N.V.*, 89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015) (resignation after GAAP violations over revenue recognition); *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *17 (S.D.N.Y. Aug. 2011) (resignation after restatement of financial conditions to correct revenues); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) (resignation after internal investigation into annual reports).

Dated:  July 7, 2022

Respectfully submitted,

*/s/ Daniel L. Cantor*_____
Daniel L. Cantor
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 326-2000
Email: dcantor@omm.com

William K. Pao (pro hac vice)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone: (213) 430-6000
Email: wpao@omm.com

*Attorneys for Defendant Canaan Inc.*

11